KOSTUBA v. MILLER, *Appellant.*

Division One, January 26, 1897.

1. **Practice**: ACTION AT LAW: EQUITABLE DEFENSE: WAIVER. Where the defendant in the trial of a cause treats it as one at law he can not afterward claim it should have been tried as one in equity because the answer set up an equitable defense.

2. ———: ———: ———. An equitable defense will not convert an action at law into one in equity where no affirmative relief is asked.

3. **Appeal**: IMPROPER EVIDENCE: HARMLESS ERROR. A judgment will not be reversed in a case tried by the court without a jury because of the admission of improper evidence where such admission could not have prejudiced the appellant.

4. **Practice**: ACTIONS AT LAW TRIED WITHOUT A JURY: INSTRUCTIONS: FINDING OF FACTS: STATUTE. The court in the trial of actions at law without a jury may when requested either give or refuse instructions as in case of ordinary jury trials or may state its finding of facts separately from its conclusions of law as provided in Revised Statutes 1889, section 2135; but should not pursue both courses.

5. ———: ———. Where the court in such case makes merely a general finding, such action is equivalent to a general declaration of law on all the facts found.

6. ———: ———. The finding of facts by the court in this case, *held* sufficient.

7. **Valuable Services Rendered Another**: INTENTION OF PARTIES: PRESUMPTION. Where one renders valuable services for another the benefit of which the latter accepts, the law presumes an intention on the part of the former to charge, and of the latter to pay, their reasonable value.

8. ———: ———: CONTRACT. Where, however, such services are rendered by a daughter for her father, the law, because of the relation of the parties, will, in the absence of proof of a contract, express or implied, presume the services were voluntary and gratuitous.

9. ———: ———: ———. The defendant went to live with her father with the understanding and agreement that she was to do his household and like work and her father was to pay their expenses. They so remained together without any change in their agreement until she caused him to be sent to an asylum because of his insanity. There was no evidence to show that defendant expected pay for her services when they were being rendered. *Held*, in an action by the administrator of the father for his money appropriated by defendant when the father was insane, and which defendant claimed as compensation for her services, that the administrator was entitled to recover.

*Appeal from St. Louis City Circuit Court.*—HON. DANIEL DILLON, Judge.

AFFIRMED.

*J. E. & J. F. Merryman* and *William Moore* for appellant.

(1) The petition is one at law to which defendant interposed a general denial, and also an equitable de-

fense, but the court ignored the equitable defense and tried the case on the legal issues alone. This court has more than once decided, where the answer to an action at law sets up an equitable defense and prays for affirmative relief, the cause becomes an equitable suit and is governed by the rules of procedure applicable thereto. *Wendover v. Baker*, 121 Mo. 273; *Freeman v. Wilkerson*, 50 Mo. 554; *Conran v. Sellew*, 28 Mo. 320; *Ellis v. Kreutzinger*, 31 Mo. 432; *Richardson v. Pitts*, 71 Mo. 128; *Stivers v. Horne*, 62 Mo. 473; *Allen v. Logan*, 96 Mo. 591. (2) The court failed to find the facts on which to base the conclusions of law that Martin Graf was of unsound mind and incapable of attending to business at the time of the transaction. (3) The law does not require any particular degree of understanding to make a contract. All that is required is sufficient capacity to understand the business he was engaged in, and, in determining whether Martin Graf was at the times he indorsed the certificates of deposit, unable and incapable of' understanding the business transaction in which he was engaged, will take into consideration all the facts and circumstances surrounding the grantor, and the obligations that he was under to defendant for the services rendered, and the care, attention, and nursing given her aged father. *Dickson v. Kempinsky*, 96 Mo. 252; *Keithly v. Keithly*, 85 Mo. 217; *Jackson v. Hardin*, 83 Mo. 175; *Brinkman v. Rueggesick*, 71 Mo. 553; *Benoist v. Murrin*, 83 Mo. 175; *Moore v. Moore*, 67 Mo. 192. (4) Child may recover for services if he produce proof of services from which a promise of payment may be inferred. *McMillen v. Lee*, 78 Ill. 340; *Freeman v. Robinson*, 38 N. J. 383; *Murky v. Brewster*, 10 Hun (N. Y.), 16; 17 Am. and Eng. Ency. of Law, 340; *Smith v. Myers*, 19 Mo. 433.

*John A. Gilliam* for respondent.

(1) If defendant seeks to rebut presumption arising from relationship that no charge for caring for infirm parent is intended, she should be required to show a state of facts overcoming the natural presumption that she did not intend to charge for the services. *Erhart v. Dietrich*, 118 Mo. 418; 24 S. W. Rep. 188; *Snyder v. Free*, 114 Mo. 360; *Morris v. Barnes*, 35 Mo. 112; *Hart v. Hart*, 41 Mo. 441; *Guenther v. Birckicht*, 22 Mo. 439; *Bank v. Aull*, 80 Mo. 199. (2) Even if this counterclaim for services were treated as an equitable defense, for which construction we fail to see a scintilla of reason, the courts of Missouri have decided that it is still an action at law. *Kerstner v. Vorweg*, 32 S. W. Rep. 298; *Carter v. Prior*, 78 Mo. 222. (3) Appellant treated it as a law case below. She can not shift her ground. *Bank v. Gallaher*, 43 Mo. App. 482; *Ellis v. Harrison*, 104 Mo. 170; *Harper v. Morse*, 114 Mo. 317. (4) Doctor Hochdoerfer had fully qualified as an expert, and the allowance of the question as to Graf's insanity was solely within the discretion of the court and its finding is conclusive. *Thompson v. Ish*, 99 Mo. 160; *Gates v. Railroad*, 44 Mo. App. 488; *Turner v. Harr*, 114 Mo. 335; *State v. Cole*, 94 N. C. 958; *Flynt v. Bodenhamer*, 80 N. C. 205. (5) This being a trial before the court great rigidity of rule as to admission of evidence is not required, as it is not to be expected that the court will be easily misled. *McCullough v. Ins. Co.*, 113 Mo. 606; *Hellman v. Bick*, 55 Mo. App. 168. (6) This case will clearly come within the rules as to evidence laid down in the following cases. *Laumeier v. Gehner*, 110 Mo. 122; *Julian v. Calkins*, 85 Mo. 202; *Lane v. Lane*, 113 Mo. 504; *Crook v. Tull*, 111 Mo. 283. (7) If the question of undue influence was

not as fully gone into in the declarations as appellant wanted, she should have asked further declarations thereon. *Cochran v. Thomas,* 33 S. W. Rep. 6. (8) Having submitted to the trial court in her declarations of law, the question of undue influence as a question of fact, she can not now allege it to be a question of law. *Ellis v. Harrison,* 104 Mo. 270.

BRACE, J.—This suit was instituted on the twenty-third of December, 1893, by Charles J. Kostuba as guardian and curator of Martin Graf an insane person; after the case was brought to this court by appeal, Graf died, and the St. Louis Trust Company was appointed and qualified as his administrator, and substituted as party plaintiff and respondent herein.

The petition is in four counts. The court found in favor of the defendant on the issues in the first two counts, and in favor of the plaintiff on the third and fourth counts, and from the judgment on the finding on these counts in favor of the plaintiff the defendant appealed.

The third count charges, in substance, that Martin Graf on the fifth day of September, 1892, being then ninety-two years of age and of unsound mind, and having on deposit in the National Bank of Commerce in St. Louis, the sum of $5,150, was induced by the undue influence of the defendant over his weak and incapable mind, and without any valuable consideration, to transfer and deliver the same to her. That the same, in equity, was received by her to the use of the said Graf, has been demanded and payment thereof refused, and judgment for that amount with interest is prayed for.

The fourth count charges that in like manner and by like means she received from the said Graf the further sum of $5,000 on the third day of July, 1893,

which he then had on deposit in the Laclede National Bank of St. Louis, for which amount judgment is also prayed.

The first and second counts on which the issues were found for the defendant were also for moneys had and received by the defendant from the said Graf, obtained as is charged in like manner and by like means, the first for $3,500, obtained on the second day of January, 1889, and thereafter invested in premises known as 2324 Scott avenue, St. Louis, Missouri; the second for the sum of $2,500 obtained at divers times, in sums of $500 each, during the years 1890, 1891, 1892, and 1893.

The answer of the defendant, after admitting the appointment of plaintiff as guardian, and that she is the daughter of said Graf, denies the allegations contained in each count of the petition, interposes a plea of the statute of limitations to the first count, and for further answer to the petition, it is therein alleged:

"That on or about the thirty-first day of May, 1871, defendant, at the special instance and request of Martin Graf, her father, who was then about seventy (70) years of age, and in consequence of his age and weakness of body, needed the special care and attention of this defendant, and, at his special instance and request, defendant moved to his house, in the city of St. Louis, and became his servant, and then and there undertook to take charge of all the household duties; to cook, wash, and in every respect to perform all the labor attendant on keeping the house in order; also to take personal charge and to give her time, attention and care to her aged father, in the daytime as well as the night. And from the day and year aforesaid, till the seventeenth day of October, 1893, this defendant continued to perform all the labor in doing the work of said house as well as the cooking and washing, and

giving her watchful care and attention to her father. And this defendant says that her services done and performed as aforesaid, were well worth the sum of one thousand ($1,000) dollars per year. Therefore, defendant says that she denies each and every allegation in plaintiff's petition, charging her with obtaining any money or property from the said Martin Graf at the various times charged in plaintiff's petition, by undue influence and persuasion. And defendant says, at no time did she ever attempt to exercise any undue influence over the mind of Martin Graf. She admits that at various times from the thirty-first day of May, 1871, to the seventeenth day of October, 1893, the said Martin Graf, her father, gave her various sums of money, but it was in consideration of the work and labor and services performed by this defendant for the said Martin Graf, as aforesaid, all of which was actually necessary for the preservation of the property and the well-being and comfort of her said father, Martin Graf.

"This defendant admits that sometime from the fourth day of September, 1886, to the fourth of September, 1888, her father Martin Graf, advanced her the sum of about thirty-five hundred ($3,500) dollars, with which she purchased a home for herself, and for the purpose of taking care of her aged father; all of which was done with the knowledge and consent of her said father, he superintending the purchase of said property and having the deed made to this defendant. And at the time he gave to his other children, to wit, to Mrs. Hoover, the sum of four thousand ($4,000) dollars, and to her other sister, Mrs. Bottoner (Mrs. Bardenheir) the sum of four thousand five hundred ($4,500) dollars.

"Defendant further says, that she denies that she ever received any money or property of any kind or

description from the said Martin Graf when he was not mentally capable of making disposition of said property. That in every transaction that she ever had with him, he was fully capable of understanding the transaction in all its bearings, and this defendant never did by any act, deed or persuasion obtain any property wrongfully and illegally from the said Martin Graf. That the labor and services performed as aforesaid by defendant were fully recognized by her said father as being necessary for his well-being, as well as his comfort and pleasure.

"And having fully answered plaintiff's petition and each and every count therein, this defendant prays the court to render judgment in her favor, dismissing plaintiff's petition, and for all proper relief."

Issue was joined by reply denying the new matter set up in the answer, and pleading the insanity of the said Graf, and the statute of limitations thereto.

The case coming on for hearing, a jury was waived, the cause submitted to the court on the pleadings and evidence.

At the close of all the evidence the counsel for the defendant moved the court:

"To state in writing the conclusions of facts found, separately from the conclusions of law.

"*Second*. And to declare the law as follows: As to the first count in the petition under the pleadings and evidence, the judgment should be for defendant.

"*Third*. As to the second count, there is no evidence to sustain the same.

"*Fourth*. And as to the third and fourth counts in the petition, plaintiff can not recover unless at the times defendant received the certificates of deposit from Martin Graf, given by the National Bank of Commerce and the Laclede National Bank for five thousand ($5,000) dollars each, Martin Graf was incapable of

understanding the business he was engaged in, and defendant by the exercise of an undue influence over his mind obtained the indorsement of both or either of said certificates of deposit, on which the money was drawn; the law is for defendant, and the court, in determining whether Martin Graf was at the times he indorsed the certificates of deposit unable and incapable of understanding the business transaction in which he was engaged, will take into consideration all the facts and circumstances surrounding the grantor, and the obligations that he was under to the defendant for the services rendered and the care, attention, and nursing given her aged father.

"*Fifth.* If the defendant from the year 1871 rendered services for Martin Graf in attending to the household duties, cooking, washing, and caring for him while sick, as well, till the tenth day of October, 1893, and the services rendered were worth the sum of ten thousand ($10,000) dollars or more, defendant is entitled to recover the same, and to retain the money in her hands for that purpose which she received on the certificates of deposit, unless from the evidence the court finds that Martin Graf never intended to pay defendant anything for the services rendered, and the defendant never intended to charge for the same, and that all her work was intended as gratuitous; and in determining the fact as to whether defendant intended her services as a gratuity, or expected pay for the same, the fact that she received from Martin Graf the money is presumptive evidence, if not conclusive, that she intended it as in consideration for the services rendered.

"*Sixth.* And from all the evidence in the case defendant is entitled to retain the money in her hands for the services rendered, if the same was worth an amount equal to the amount she received from Martin Graf, and the fact that Martin Graf became of unsound mind

can make no difference as to right of defendant to recover in this case for the value of the services rendered, and the court can not take into consideration the money received by defendant, as charged in the first count of the petition, as under the evidence and the law the same is an advancement and can not be considered by the court for any purpose."

The court gave the second, fourth, and fifth declarations as asked and refused the third and sixth, to which refusal the defendant excepted. The court then made the following finding of facts:

"The court sitting as a jury, from the evidence finds the following facts:

"*First.* On and before September 5, 1892, said Martin Graf was and since has been of unsound mind and incapable of managing his affairs.

"*Second.* And that on said fifth day of September, said Graf had on deposit in the National Bank of Commerce in St. Louis $5,150, and that on that day, by reason of the undue influence of defendant over said Graf, said Graf delivered to defendant $5,000 of said sum of $5,150, without any consideration whatever, which said sum of $5,000 was demanded by plaintiff from defendant before the commencement of this action, and which said sum of $5,000, or any part thereof, said defendant has never returned, or paid to plaintiff or to said Graf.

"*Third.* That on July 3, 1893, said Martin Graf had in Laclede National Bank of St. Louis $5,000, and on that day, by reason of the undue influence of defendant over said Graf, he delivered said $5,000 to defendant, without any consideration whatever, which said $5,000 defendant retains, and no part of which has she returned or paid to said Graf or plaintiff, and that before commencement of this action plaintiff demanded of defendant said $5,000.

"*Fourth.* That any services rendered said Graf by defendant were the services of a daughter to her father, and were rendered without any understanding or agreement on the part of defendant or that said services were to be paid for by said Graf."

To which finding counsel for defendant excepted, and thereafter the court rendered judgment as follows:

"The court, having heretofore taken this cause under advisement, and being now sufficiently advised of and concerning the premises, finds the issues herein joined in favor of the defendant on the first and second counts mentioned in the petition, and finds for the plaintiff on the third count mentioned in the petition, and assesses his damages on said count at the sum of five thousand, one hundred and twenty-seven dollars and fifty cents, and finds for the plaintiff on the fourth count stated in the petition, and assesses his damages on said count at the sum of five thousand, one hundred and twenty-seven dollars and fifty cents. It is therefore considered and adjudged by the court that the plaintiff take nothing by his suit as to the first and second counts mentioned in the petition, but that on said counts defendant go hence without day; and it is further considered and adjudged by the court that the plaintiff recover of defendant the sum of ten thousand, two hundred and fifty-five dollars, the damages aforesaid in the aggregate as assessed on the said third and fourth counts stated in the petition, together with his costs and charges in this behalf expended, and have execution therefor."

1. It is contended for the defendant that the court below committed error in trying the case as an action at law, and in so doing ignored the defense in the answer which was a defense in equity, and we are cited to cases in which it is contended that it was held that where an answer to an action at law sets up an equita-

ble defense and prays for affirmative relief, the cause became an equitable one, and is governed by the rules of procedure therein.

The answer to this contention is that the defendant, in the trial of the case, treated it as an action at law, and parties are generally bound by the positions they assume upon the trial (*Harper v. Morse*, 114 Mo. 317); that an equitable defense can not convert an action at law into a proceeding in equity, except when affirmative equitable relief is sought. *Kerstner v. Vorweg*, 130 Mo. 196; *Carter v. Prior*, 78 Mo. 222.

As appears by the answer, no affirmative relief was sought in this case. The defendant, by the facts set out in the answer, simply sought to defeat plaintiff's action at law. Or, if by a liberal construction, the answer can be held to have sought any affirmative relief, it would be in the nature of a judgment for compensation for services rendered at the request of her father—which, at most, would simply constitute a counterclaim at law; and, finally, whether the defense set up in the answer be characterized as legal or equitable, it was not ignored by the court, but duly considered, as sufficiently appears by the statement.

2. On the trial Dr. Hochdoerfer, attending physician of the insane department of the Alexian Brothers Hospital to which Martin Graf was sent on the tenth of October, 1893, at the instance of the defendant, and who attended on him from that date until November 7, 1893, testified as a witness. To his evidence a single exception was saved, and it was to the following question: "*Q*. Now in your judgment, from the matters you observed, how long before he arrived at the hospital had he been in that unsound mind?" This question was objected to on the ground "that no proper foundation had been laid for it." The answer to the question was: "He had been in this way very likely

from the nature of the trouble for several years before." To the answer no objection was made, nor exception saved.

The doctor had fully qualified as an expert; had testified to the same effect before without objection, and without objection the same fact was established by other evidence. The question was, we think, a proper one, but whether a proper one or not, the defendant is not in a position to complain, as the answer could not have been prejudicial to the defendant's case, which was being tried before the court without a jury. If the answer did not hurt, the question could not; and the admission of this evidence is not reversible error in any view.

3.   In the trial of actions at law by the court without a jury, in order that the theory of law upon which the case was tried may be made apparent, as well as how the court found the facts, the court may either give or refuse instructions the same as when trying the case before a jury, or pursue the course pointed out by section 2135, Revised Statutes, 1889. *Suddarth v. Robertson*, 118 Mo. 286. The court, of course, ought not to pursue both courses because they are inconsistent, and is not required to pursue either unless requested, but may make a general finding which is equivalent to a declaration of law upon all the facts found. *Cochran v. Thomas*, 131 Mo. 258.

In this case, however, the counsel for the defendant requested the court in the same motion to pursue both courses, i. e., to state in writing the conclusions of facts found *separately* from the conclusions of law, and to state such conclusions *together*, as in the fourth, fifth, and sixth declarations prayed for, which are in the nature of instructions, being declarations of law upon the facts therein hypothetically stated, and to be found. The court complied with his request by

giving the fourth and fifth and refusing the sixth declarations, and in addition making a separate statement in writing of its conclusions of facts.

As the defendant had the facts stated as she desired them to be stated, upon which the court found and declared the law, we do not see that she is in a situation to complain of the insufficiency of the additional separate statement. And as the theory of law upon which the case was decided, upon the facts in those declarations found, clearly appears, we do not see how any insufficiency therein, if there be such, could have injuriously affected the defendant's case.

As appears therefrom, the court in effect held, that the defendant having at the dates mentioned in the third and fourth counts received $10,000 of the moneys of Martin Graf, he being at the time of unsound mind, and incapable of making a contract, the plaintiff is entitled to recover the same, although the defendant may theretofore have rendered service to the said Graf of the full value thereof, it not appearing that there was any agreement that they were to be paid for.

The plaintiff's action was for money had and received; to sustain this action it was only necessary for the plaintiff to show that the defendant had received the money, and that *ex aequo et bono* she ought to return it. 2 Ency. of Plead. and Prac. 1016. To defeat the action it was only necessary for the defendant to show that although she received the money, yet "in natural justice and equity" she ought not to be required to return it. *Teasdale v. Stoller*, 133 Mo. 645.

When one performs necessary and valuable service for another, the benefit of which has been received and enjoyed by him, the law presumes an intention upon the part of the person rendering the service to charge, and upon the part of the person receiving such benefit to pay, the reasonable value thereof, and raises a

promise upon the part of the latter to pay such reasonable value.

Where, however, such services are of the character of those performed in this case, by a daughter for her aged and infirm father, this presumption is rebutted by the relation existing between the parties, from which the presumption then arises that the services were voluntary and gratuitous, given in response to the promptings of filial duty and affection—and this presumption must prevail unless a contract to pay for them be shown.    17 Am. and Eng. Ency. of Law, 336, *et seq.*

The only contract, express or implied, which the evidence tended to show was, that, when they commenced living together, the understanding and agreement was that the defendant was to do the work and her father was to pay the expenses, and so they continued to live together, as far as the evidence shows, without any other or different understanding in regard to her services, until she caused him to be sent to the hospital on account of his insanity.

The finding of the court that at the time the defendant obtained these moneys from her father, he was of unsound mind, and that she obtained them without any consideration whatever, merely by the exercise of the power which she had over his will, is amply sustained by the evidence, and the fact that she may have intended when she took them that they should be in consideration of services theretofore performed under this agreement with her father could give her no right in law or equity to retain them.

In order to raise an equity to retain the money or any part thereof as a consideration for her services there must have been an agreement, express or implied when the services were being rendered, that they were to be paid for.    There was no evidence tending to

prove such an agreement, express or implied, beyond what has been stated, and no evidence tending to show that defendant intended or expected pay for her services when they were being rendered and before she got hold of the money, beyond the support she received from her father's means. Having thus received compensation for those services, upon no principle of equity can she be permitted to retain the moneys charged for in the third and fourth counts, which she wrongfully converted to her own use.

The facts in this case are far from bringing it within the principle of the case of *Reando v. Misplay*, 90 Mo. 251, in which it was simply held that an action could be maintained against an insane person for necessaries.

We find no error in the record affecting the merits of the case. The judgment is for the right party, and is affirmed. All concur.

### SEPARATE MEMORANDUM.

BARCLAY, P. J.—While concurring in affirming the circuit judgment, it is not my intention to be understood as intimating that a party to an action at law (tried by the court alone) may not properly ask for specific findings of fact under section 2135 (R. S. 1889), and also submit requests to the court (under section 2188) for declarations (in the nature of instructions) on any propositions of law applicable to the facts.