BANK OF ATCHISON COUNTY, Respondent, v. J. C. BOHART COMMISSION COMPANY, Appellant.

**Kansas City Court of Appeals, April 30, 1900.**

**Bills and Notes:** ACCEPTANCE OF UNDRAWN BILL: DESCRIPTIONS: WRITING. In Missouri a bill of exchange may be accepted before it is drawn by an unconditional promise in writing describing it in terms not to be mistaken; but a letter agreeing to pay drafts of G. for cattle or hogs made on the day of shipment not to exceed two car loads at a time, is not sufficiently definite to constitute an acceptance within the rule. Cases considered and distinguished.

Appeal from the Buchanan Circuit Court.—*Hon. W. K. James*, Judge.

REVERSED.

*W. K. Amick* for appellant.

The letter of July 6, 1898, is not an unconditional promise to accept the draft sued on, and plaintiff can not maintain this suit on the draft. The proper remedy was suit for damages for failing to accept the draft. R. S. 1889, sec. 721; Valle v. Cerre, 36 Mo. 575, loc. cit. 590; Boyce & Henry v. Edwards, 4 Pet. 111; Carnegie v. Morrison, 2 Met. 381, loc. cit. 406; Bank v. Lynch, 52 Md. 270, loc. cit. 276-280; Bank v. Clark, 61 Md. 400, loc. cit. 406; Brinkman v. Hunter, 73 Mo. 172, loc. cit. 179.

*Crow, Eastin & Eastin* for respondent.

The letter of July 6, 1898, is an unconditional promise in writing to accept a bill before it is drawn, within the meaning of the statute.   R. S. 1899, sec. 445; Lathrop v. Harlow, 23 Mo. 209; Adoue v. Fox, 30 Mo. App. 98; Brinkman v. Hunter, 73 Mo. 172; Valle v. Cerre, 36 Mo. 575; Ford v. Angelrodt, 37 Mo. 50.

ELLISON, J.—This action is to charge defendants as acceptors of a draft for $613.85.   Judgment in the trial court was for plaintiff.   The action is based on the following letter addressed to plaintiff's cashier:

"South St. Joseph, Mo., July 6, 1898.

"H. E. Wyatt, Cas.

"Rockport, Mo.

"Dear sir:   We told Mr. Gabel we would pay his drafts for cost of cattle, or hogs, not to exceed two car loads at a time, made on day of shipment.

"Of course, Mr. Gabel is a stranger to us, is why we don't want to give him a string without limit.   We have, from what we have seen of the gentleman, confidence in his ability in the stock business.        Yours very truly,

"J. C. Bohart Commission Co."

· The draft drawn in the following September is as follows:

"The Bank of Atchison County,

"613.85.                    Rockport, Mo., Sept. 22, 1898.

"Pay to the order of H. E. Wyatt, cashier, six hundred and thirteen 85-100 dollars, one load of hogs, value received, and charge the same to account of

"E. Gabel.

"To J. C. Bohart Com. Co., South St. Joseph, Mo."

In our opinion the court erred in holding that the letter

aforesaid constituted an acceptance. To constitute an actual acceptance of a bill to be afterwards drawn it must be described and individualized so that it may be identified. In Coolidge v. Payson, 2 Wheat. 66, it was laid down by chief justice Marshall:

"A letter written within a reasonable time before or after the date of a bill of exchange, describing it in terms not to be mistaken, and promising to accept it, is, if shown to the person who afterwards takes the bill on the credit of the letter, a virtual acceptance binding the person who makes the promise."

That case not only settled the law in this country that there might be an actual acceptance, by a collateral instrument, of a bill of exchange which was not yet in existence, but it also determined the essential requisites of such acceptance; that is to say, that it must designate the bill, to be drawn, in terms not to be mistaken. The decision was rested practically upon the then state of the law in England. The rule in England has been effectually annulled by act of parliament requiring an acceptance to be written on the bill; thus doing away with the former practice of acceptance of a bill before it was drawn, by a collateral undertaking. Bills had theretofore, in England, not only been accepted by collateral undertaking before they were drawn, but such collateral undertaking was frequently by parol; but by the act aforesaid, that feature of the law was also cut away.

In this state, a bill may still be accepted before it is drawn by a collateral undertaking, though it must be in writing, as will be seen by the reading of Revised Statutes 1889, section 721, as follows: "An unconditional promise, in writing, to accept a bill before it is drawn, shall be deemed an actual acceptance in favor of every person to whom such written promise shall have been shown, and who, upon the faith thereof, shall have received the bill for a valuable consideration." The rule with us is therefore fixed by statute.

But what will be considered to be such acceptance, save only that it must be unconditional and in writing, is left for judicial construction.

In our opinion, the rule as to the identification of the bill or draft to be drawn is well stated in Coolidge v. Payson, *supra.* We the more readily acquiesce in that statement of the rule since the question is one of general commercial law which necessarily receives its most authoritative announcement from the supreme court of the United States. That rule is, as we have stated, that the bill, to come into existence, must be a particular bill and described in the alleged acceptance, in terms not to be mistaken. In the Coolidge case, the letter of acceptance refers to an indemnifying bond and states that if the bond is satisfactory to one Williams, "he will inform you, and in that case your draft for two thousand dollars will be honored." This letter refers to a specific transaction and agrees to pay a specific sum as the result of that transaction, and the court treated it as describing the draft in unmistakable terms. But in the case at bar, no particular draft is referred to in the letter claimed to be an acceptance. We will "pay his drafts for cost of cattle, or hogs, not to exceed two car loads at a time, made on day of shipment," is the language of the letter. No amounts are named, nor is there any mode stated whereby such sums may be ascertained. The cost of two carloads of cattle or hogs is certainly an indefinite expression. There is no particularizing of either the stock or the cost. The letter is much too general to be regarded as an actual acceptance of a particular bill.

In Boyce v. Edwards, 4 Peters 111, the following letter was relied upon as an acceptance:

"Charleston, March 9, 1825.

"Mr. Edwards.

Dear Sir: Mr. Adam Hutchinson of Augusta is authorized to draw on us for the amount of any lots of cotton

which he may buy and ship to us, as soon after as opportunity will offer; such drafts shall be duly honored by yours, respectfully, Boyce, Johnson and Henry."

This letter was supplemented by another stating: "You are at liberty to draw on us when you send the bill of lading. We do not put you on the footing of the customers, for we do not allow them to draw for more than three-fourths in any instance. You may draw for the amount."

With respect to the first letter the court said: "What is conclusive against its being considered an acceptance is, that it has no reference whatever to these particular bills, but is a general authority to draw at any time, and to any amount, upon lots of cotton shipped to them. This does not describe any particular bills in terms not to be mistaken. The rule laid down in Coolidge v. Payson requires the authority to be pointed at the specific bill or bills to which it is intended to be applied; in order that the party who takes the bill upon the credit of such authority may not be mistaken in its application."

This objection was also applied to the subsequent letter, the court stating: "It is a general authority to Hutchinson to draw, upon sending to the defendants the bills of lading for the cotton. * * * Hutchinson is only authorized to draw upon sending the bills of lading to the defendants. And although it may fairly be collected from the evidence, that that was done in the present case; it does not remove the great objection, that it is a general authority, and does not point to any particular bills and describe them in terms not to be mistaken, as required by the rule in Coolidge v. Payson." See, also, 2 Met. 381, 406.

Both parties to this controversy claim to be sustained by the adjudications in this state. In Valle v. Cerre, 36 Mo. 590, the letter in evidence was as follows: "You are at liberty at all times to value (draw) on us as against actual

shipments to the extent of three-fourths of their value, at five to ten days sight." This was held to be more in the nature of a letter of credit than a promise to accept a particular bill. The court saying: "It is the established rule of law that a written promise to accept a non-existing bill must point to the particular bill and describe it in terms not be mistaken." And: "This letter of credit amounted only to general authority to draw bills for a given purpose, to indefinite amounts, and, on uncertain times, within a general limitation; it did not point to the particular bills, nor describe them in terms by which they could be identified. It did not amount to an 'actual acceptance' of the bill in question."

We are cited by plaintiff to Adoue v. Fox, 30 Mo. App. 98, and Lathrop v. Harlow, 23 Mo. 209. The former has no tendency to support plaintiff's case. If the latter is to be considered as supporting plaintiff's claim it is not in harmony with Valle v. Cerre, *supra*. The cases of Ford v. Angelrodt, 37 Mo. 50, and Brinkman v. Hunter, 73 Mo. 172, do not present the point involved here.

We have not considered whether defendant is liable on an agreement to accept as distinguished from an actual acceptance with which he was charged in this action.

The judgment will be reversed. *Smith, P. J.,* concurs; *Gill, J.,* absent.