KATHRYN MORRISON, Respondent, v. JOHN MOR-
RISON, Administrator, Appellant.

St. Louis Court of Appeals, July 3, 1917.

1. **PARENT AND CHILD:** Services Rendered by Child: Presumption
as to Compensation. Where services are rendered to a parent by
a child, it is presumed that they are rendered gratitutiously, and,
in order to recover compensation, the child must prove an agree-
ment to pay for the services, either by direct testimony or by facts
and circumstances indicating a mutual understanding and intention
to that effect; and this is true even though the child is an adult,
making his own way in the world, and that he returned to the
parent's home solely for the purpose of performing services such
as he habitually performed for others for hire and by which he
earned a livelihood.

2. ———: ———: Sufficiency of Evidence. In an action by a daugh-
ter to recover for services rendered her deceased mother, evi-
dence *held* insufficient to show that the mother agreed to pay for
the services.

3. ———: ———: Gratitutious Services. If services performed for
a parent by a child were originally intended as a gratuity, they
cannot be made the subject of a claim against the estate of the
parent, after the death of the latter.

Appeal from Franklin Circuit Court.—*Hon. R. A.
Breuer*, Judge.

REVERSED.

*James Booth* for appellant.

(1) Where it is sought to subject another to lia-
bility and the family relation or relation of parent and
child exists, "loose declarations made to others or even
to the claimant . . . will not answer. That which
may be only an expression of intention is inadequate for
the purpose. . . . It must have been the purpose of
the deceased to assume a legal obligation, capable of be-
ing enforced." Woods v. Land, 30 Mo. App. 176; Brock

v. Cox, 38 Mo. App. 40; Lawrence v. Baily, 84 Mo. App. 107; Brand v. Ray, 156 Mo. App. 622; Wood v. Lewis, 183 Mo. App. 553; Miles et al. v. Whitesides Estate, 183 S. W. 34.

*W. L. Cole* for respondent.

ALLEN, J.—This is a proceeding, begun in the probate court of Franklin county, to establish a claim in favor of plaintiff, Kathryn Morrison, against the estate of her mother, Mary Morrison, who died intestate at Pacific, Missouri, on August 6, 1914. The demand filed by plaintiff is as follows:

"For my services as nurse and waiting on my mother from Dec. 22, 1913, to the 6th day of August, 1914, 227 days, at $3.00 ............... $671.00."

After a jury trial in the probate court the claim was allowed in full against the estate. Upon the administrator's appeal to the circuit court and a trial there *de novo,* before the court and a jury, there was a verdict and judgment for plaintiff in the sum of $336; and the case is here on the administrator's appeal.

Plaintiff is the daughter of one Peter Morrison, deceased, who for many years resided with his family at Pacific, Missouri. It appears that plaintiff, who was about forty-five years old at the time of the trial below, left home when she was about fourteen years of age. For some years prior to the period covered by her demand she had been engaged in nursing, as a vocation, in the city of St. Louis. She is referred to as a "practical nurse." It is said that Peter Morrison died in 1909; and it appears that plaintiff returned home and nursed him in his last illness, and that she likewise returned home and nursed a brother who died in 1911. For these services she made no charge. After the death of plaintiff's father and of this brother, the Morrison family consisted of the intestate Mrs. Mary Morrison, her son, John Morrison, who is the defendant administrator, and her daughter Celester Morrison, now Mrs. Carrigan. In November, 1913, another sister, Maggie Morrison, re-

turned to the home on account of her mother's sickness and remained there until February, 1914. Both John and Celester worked and earned wages, the former being a carpenter for a railway company, and the latter working for a time in a local telephone exchange and later at the post office at Pacific. Their earnings paid the rent of the home and supported the family; the mother, it is said, having no income.

For some time prior to the period covered by the demand, plaintiff's mother had been quite sick. It appears that she was afflicted with tuberculosis of the lungs and also with cancer of the bowels. On or about December 22, 1913, in response to a letter from her brother John, the defendant administrator, plaintiff, who was then nursing a patient in the city of St. Louis, at once gave up her work and went to the Morrison home, where she took charge of her mother, and nursed and waited upon her until her death, on August 6, 1914. It is undisputed that plaintiff's mother, who, it is said, was not only suffering from the diseases mentioned, but was not at times in her right mind, required a great deal of attention, both during the day and at night; and that plaintiff faithfully and attentively nursed and cared for her mother during all of the period mentioned.

Maggie Morrison, plaintiff's sister above mentioned, called as a witness for plaintiff, testified that on the day following that upon which plaintiff returned home the family physician, Dr. McNay, called to see Mrs. Morrison, and that the latter said to him: "Doctor, this is my daughter Kate, my nurse; she will take care of me." She stated that her mother said that no trainel nurse could take better care of her than did plaintiff, and that but for plaintiff she "would be in the cemetery." This witness did not see the letter written to plaintiff, mentioned above, nor did she hear her mother say anything about sending for plaintiff. She says that her brother John came out of the mother's room, asked for stationery, and asked the witness to tell him plaintiff's address in the city of St. Louis.

197 M. A.—34

A Mrs. Waters, who lived near the Morrison home, and who frequently visited Mrs. Morrison, testified that she had a conversation with the latter after plaintiff returned home. A portion of her testimony is as follows: Q. "Did you ever have any talk with Mrs. Morrison after Kate came home; why or how Kate come to come home?" A. "She did not say anything, but John needed her and she was needed." Q. "Is that all she said?" A. "Besides that, she told me, 'of course there was a good deal of expense but Celester would pay the debt and she would have enough afterwards.'" Defendant's counsel moved to strike out the statement, "but Celester would pay the debt." This motion was overruled, and the witness then said: "She was under a great deal of expense, but she said Celester would pay the debts, and she will have enough afterwards."

Omitting the testimony of witnesses relative to the character and extent of the services performed, and going to show that plaintiff faithfully performed them and was kind and affectionate to her mother, this is the case made for plaintiff.

In defense John testified that plaintiff waited on his mother and did the housework, though his sister Celester "helped out at times" and slept in the room with his mother. He said: "Celester was generally the one who got up first at night to wait on mother, but we would all get up." He testified that he said nothing whatsoever to his mother about the letter written by him to plaintiff. The letter was not shown in evidence but John's testimony as to its contents is that he therein told plaintiff that if she wanted to see her mother alive she had better come home; and that he said nothing in the letter about wanting plaintiff to perform any services. He further testified that he did not know that plaintiff intended to make any charge for her services, and had never heard his mother say anything about paying her; that he first learned that plaintiff intended to charge for her services when he received a bill from her counsel in September or October, 1914.

A Mrs. Costello, a witness for defendant, testified that in January or February, 1914, she was at Mrs. Morrison's bedside, plaintiff being present, and that in the course of a conversation plaintiff, among other things, said: "I have gotten good wages ever since I was sixteen years old and could get good wages now if I wasn't here." And the witness stated that Mrs. Morrison thereupon said to plaintiff: "Why did you come; I didn't send for you."

It is unnecessary to refer to the instructions further than to say that those given at plaintiff's request proceed upon the theory that it was necessary for plaintiff to show the existence of a contract between her and her mother whereby the latter became obligated to pay for the services; that it was not necessary for plaintiff to prove the existence of an express contract to this effect, but that if the jury found that she rendered the services with the expectation on her part that they would be paid for, and that the mother intended to make compensation therefor, then they would be warranted in finding that an actual contract of this nature existed. It is contended that defendant was prejudiced by the wording of two of plaintiff's instructions, but in the view which we take of the case these questions need not be noticed.

Learned counsel for defendant, appellant here, insists that plaintiff failed to make a case for the jury, and that the trial court consequently erred in refusing to peremptorily direct a verdict for defendant as requested by him at the close of plaintiff's case and again at the close of the entire case. The argument advanced for a reversal of the judgment below proceeds upon the theory that under the circumstances the law will not imply a promise to pay for the services rendered the deceased, however beneficial, but that it devolved upon plaintiff to prove the existence of a contract to pay therefor, either by direct proof of its existence or by reasonable inference from the facts and circumstances in evidence. And it is contended that the evidence adduced fell far short of making a prima-facie showing that any such contractual relation existed between plaintiff and her mother.

The rule of law applicable where the family relation exists has been repeatedly applied by our courts. In Wood v. Lewis, 183 Mo. App. l. c. 562, 563, 167 S. W. 666, we stated this rule in the following language, citing some of the numerous prior decisions in this State wherein it has been applied, viz:

"It is well settled that the law implies no promise to pay for services rendered by one member of a family to another; but on the contrary the presumption obtains, prima-facie, that such services are rendered gratuitously. Ordinarily where one performs services for another, at the latter's request, but without any agreement or understanding as to remuneration, the law implies a promise on the part of the party requesting the services to pay the just and reasonable value thereof; but where the services are rendered to each other by members of a family, living as one household, no such implication will arise from the mere rendition and acceptance of the services. In such cases the law presumes that the services are rendered gratuitously, casting upon the party claiming compensation therefor the burden of rebutting such presumption. In such cases it devolves upon the plaintiff to prove an agreement to pay for such services, either by direct testimony, or by facts and circumstances indicating a mutual understanding and intention to that effect. [See Hyde v. Honiter, 175 Mo. App. 583, 158 S. W. 83; Kingston v. Estate of Roberts, 175 Mo. App. 69, 157 S. W. 1042; Hartley v. Estate of Hartley, 173 Mo. App. 18, 155 S. W. 1099; Crowley v. Dagley, 174 Mo. App. 561, 161 S. W. 366; Cole v. Fitzgerald, 132 Mo. App. 17, 111 S. W. 678; Fitzpatrick v. Dooley, 112 Mo. App. 165, 86 S. W. 719; Brand v. Ray, 156 Mo. App. 622, 137 S. W. 623; Lillard v. Wilson, 178 Mo. l. c. 153, 154, 77 S. W. 74.]"

In the case before us we regard it as clear that plaintiff's right of recovery is not affected by the existence of a family relation, as such. Plaintiff was an adult daughter of the intestate, and had been away from the parental roof for many years. She was not a member of the Morrison family, and did not return to the Morrison home to abide there as a member of the family, but for the pur-

pose of nursing and waiting upon her mother. True it is that she lived in the household during this time, receiving her board, as would doubtless any nurse have done under like circumstances. The services which she performed required her presence there; and were the case one otherwise to be treated as arising between strangers, as where no kinship between the parties exists, or where it is so remote as not to be a potent factor (as in Sprague v. Sea, 152 Mo. 327, 53 S. W. 1074), there would be no room for the application of the doctrine just mentioned on the theory that plaintiff became a member of the family circle while performing such services. But it is contended that this same doctrine here applies because of the existence of the relation of parent and child, even though plaintiff was an adult, making her own way in the world, and returned to her parent's home solely for the purpose of performing for the latter services such as plaintiff habitually performed for others for hire, whereby she earned a livelihood. Under the decisions in this State this contention, we think, must be upheld. [See Erhart v. Dietrich, 118 Mo. 418, 24 S. W. 188; Kostuba v. Miller, 137 Mo. 161, 38 S. W. 946; Bircher v. Boemler, 204 Mo. l. c. 562, 563, 103 S. W. 40; Rousiek v. Boverschmidt's Admr., 63 Mo. App. 421; Lawrence v. Bailey, 84 Mo. App. 421.]

In Kostuba v. Miller, supra, l. c. 174, 175, it is said:

"When one performs necessary and valuable service for another, the benefit of which has been received and enjoyed by him, the law presumes an intention upon the part of the person rendering the service to charge, and upon the part of the person receiving such benefit to pay, the reasonable value thereof, and raises a promise upon the part of the latter to pay such reasonable value.

"Where, however, such services are of the character of those performed in this case, by a daughter for her aged and infirm father, this presumption is rebutted by the relation existing between the parties, from which the presumption then arises that the services were voluntary and gratuitous, given in response to the promptings of

filial duty and affection—and this presumption must prevail unless a contract to pay for them be shown."

In Cole v. Fitzgerald, supra (132 Mo. App. l. c. 22 et seq, 111 S. W. 628), the learned author of the opinion refers approvingly to the doctrine stated in 21 Am. and Eng. Ency. Law (2 Ed.), 1063, upon the authority of cases there cited, to the effect that if a child of full age, who has left home and become self-supporting, return at a parent's request, a promise is inferred to pay for services rendered; stating that the doctrine "rests on a sound principle, and, if discretely applied, accords with experience." It was not applied, however, to control the decision in the case, because of "the previous trend of the decisions in this State." And for the same reason we cannot apply it here, were we disposed to do so.

Indeed, as said, the case was tried below upon the theory that no presumption would come to plaintiff's aid; that it was incumbent upon her to prove, prima facie, a contractual relation existing between her and the intestate whereby an obligation arose on the part of the latter to pay for plaintiff's services. This was proper—though we are not passing upon the questions raised as to the precise wording of the instructions. The trial court was evidently of the opinion that from the evidence adduced the jury could properly infer that plaintiff rendered the services with the intention and expectation of being paid therefor, and that Mrs. Morrison, on the other hand, intended to compensate her for the same. We have carefully scrutinized the record, and have been unable to find evidence which in our opinion justified the submission of the case to the jury under the rule of law stated above. In the first place, there appears to be no evidence tending to show that plaintiff at the time of the rendition of the services, intended to charge therefor. If they were originally intended as a gratuity they cannot now be made the subject of a claim against the estate. [See Wood v. Lewis, supra, l. c. 566, 567, 568 and cases cited.] The only evidence touching the matter appears in the testimony of defendant's witness Mrs. Costello, supra, who stated that plaintiff, on one occasion, said: "I have got-

ten good wages ever since I was sixteen years old, and could get good wages now if I wasn't here.'' This rather makes it appear that plaintiff recognized the fact that she was not earning wages or compensation at the time. Of course the jury were not required to accept this testimony; but we refer to it as being the only testimony on the subject and as having no tendency to establish the necessary element of plaintiff's case just mentioned.

Nothing appears, of any probative force, tending to show that Mrs. Morrison sent for plaintiff; and the positive testimony touching the matter is to the contrary. We have quoted above two statements said to have been made by Mrs. Morrison, which it is claimed constitute sufficient evidence to take the case to the jury on the theory that she intended to pay for the services. The first of these is testimony to the effect that she said to the family physician: ''Doctor, this is my daughter Kate, my nurse, she will take care of me.'' We are unable to see that this testimony has any tendency to show that she intended to pay for the services. It is quite true that her daughter, the plaintiff, was then her nurse and expected to take care of her, but whether for compensation or prompted by filial duty and affection remains a matter of conjecture.

The other testimony relied upon by respondent in this connection is that of Mrs. Waters, quoted above. It will be seen that this goes no further than to make it appear that Mrs. Morrison said that there would be ''a good deal of expense'' but that Celester would pay the ''debt'' or ''debts'' and have enough remaining. What debt or debts are referred to does not appear. It is to be inferred that there was ''a good deal of expense'' for medical services, medicines, special food, etc.; and it cannot well be said that the testimony tends to establish a contract on the part of the intestate to pay for plaintiff's services. Loose statements of this nature have been repeatedly held to be insufficient, in cases of this character, to establish a legal obligation capable of enforcement in law.

Though it is altogether clear that plaintiff, giving up remunerative employment, faithfully rendered long and arduous services in nursing and caring for her invalid mother, for the reasons indicated above we are of the opinion that under the evidence adduced no recovery may lawfully be had therefor. The judgment is accordingly reversed. *Reynolds, P. J.,* and *Becker, J.,* concur.