**NATIONAL MARINE SERVICE, INC.,**
Appellant and Respondent
(Plaintiff),

v.

**BRIDGE FOODS, INC.,** Respondent
(Defendant),
and
**Mark Twain Enterprises, Inc.,** Appellant
(Defendant).

Nos. 33830, 33836.

St. Louis Court of Appeals,
Missouri.

Sept. 28, 1971.

Motion for Rehearing or to Transfer to Supreme Court Denied Nov. 29, 1971.

Bernard A. Barken, St. Louis, for plaintiff-appellant.

Adolph K. Schwartz, St. Louis, for defendant, Mark Twain.

Hullverson, Richardson & Hullverson, John J. Frank, St. Louis, Donald S. Hilliary, Clayton, for defendant-respondent.

DOWD, Judge.

The River Queen Boat, which was permanently moored on the Mississippi River at St. Louis, sank at its moorings from undetermined causes during the early hours of December 2, 1967. The defendant Bridge Foods, Inc. (hereinafter Bridge Foods) operated a restaurant on this boat. Bridge Foods operated under a 10 year lease from the owner of the boat the Defendant Mark Twain Enterprises, Inc. (hereinafter Mark Twain). The lease was not due to expire until October 1, 1974. The lease included two decks, a storeroom and a stateroom. The plaintiff is engaged in the towing and salvage business on the Mississippi River and was unsuccessful in its attempt to save the boat.

Plaintiff's petition is in three counts seeking to recover for services and expenses

which it claims it rendered in connection with the salvage work. In each count, it is alleged that "at the specific instance and request of defendants, plaintiff performed work and labor, and furnished materials and equipment, in an effort to save, rescue and prevent the aforesaid River Queen from sinking; that said defendants accepted said services rendered for their benefit and availed themselves thereof." Count I seeks a judgment against the defendants jointly; Count II against Bridge Foods alone; and, Count III against Mark Twain alone. The defendant Mark Twain in its answer specifically denied it ordered any services or received any benefit from the work performed by the plaintiff.

The case was tried to a jury and at the close of plaintiff's evidence, both defendants moved for a directed verdict. These motions were denied by the court. Defendant Mark Twain offered no evidence and stood on its motion for a directed verdict. The only evidence offered by defendant Bridge Foods was the testimony of Ronald Schroeder and an answer to an interrogatory. The plaintiff filed no motion for a directed verdict against the defendant Bridge Foods at the close of all the evidence.

The jury rendered a verdict in favor of defendant Bridge Foods and rendered a verdict in favor of plaintiff and against defendant Mark Twain for the sum of $3,258.06, the full amount sued for plus interest in the amount of $264.55 aggregating $3,522.61. The defendant Mark Twain has appealed from the ensuing judgment. Plaintiff appeals from the judgment in favor of defendant Bridge Foods. Both appeals are consolidated here.

When the boat sank, the restaurant was closed and the only persons present were Ronald Schroeder, Vice-president of Bridge Foods and manager of the restaurant; the band leader and his wife; and, a tile man and his helpers who were repairing the kitchen floor. The boat sank within a few minutes after Schroeder discover-

ed that it was sinking. The owner (Mark Twain) of the boat had no one present at the time of the sinking.

Schroeder left the boat in an attempt to get help. He contacted a fuel company located nearby which radioed a towboat to go to the scene. The towboat was not capable of handling the sunken boat and it was suggested to Schroeder to call plaintiff's company. Schroeder then called plaintiff and told it "that the boat had apparently sank, or was sinking, and we needed help, and asked that they come as quickly as possible." Schroeder returned to the scene. John C. Groffel, president of Mark Twain, arrived at the scene a few hours later and was seen talking to plaintiff's employees. Groffel was seen at the scene "from time to time" while plaintiff was attempting the salvaging of the boat.

Schroeder stated on cross-examination that he called plaintiff two or three times that night because "[m]y interest was in saving our possessions and equipment, as manager of the restaurant, and also the boat; * * *." Bridge Foods lost $283,000 worth of equipment as a result of the sinking of the boat.

The plaintiff sent to the scene a towboat, two crane barges, an anchor barge, two other barges and a crew of six men. The salvaging work began at about 9:00 a. m. on December 2. At the time the work began the hull was completely under water and there was water in the main cabin of the vessel. The main concern of the salvaging company was to secure the boat by cables to the shore so that the boat "would not roll over and swing out into the river." A cable was secured around the boat to the shore. During the attempt to salvage the boat, Schroeder was advised of "what was happening" by Mr. Eugene E. Ahlemeyer, plaintiff's president. The crew continued to work until about midnight of December 2. The crew returned the following day but it was determined by plaintiff that " * * * it was too late to make any type of salvage attempt of the vessel. At that

time we secured our equipment and went back to Hartford."

Mr. Ahlemeyer testified that the reasonable value of the services rendered in its efforts to save the boat was $3,258.06 and that he sent the bill for this amount to Ron Schroeder and Bridge Foods " * * * because he (Ron Schroeder) is the one that requested our services; he came down there not once, but four times that night." He further stated that at the time the order was originally written up the only name he had to go by was Ron Schroeder who requested the services, and the bill is usually initially sent to the person who requests plaintiff to come to the job. He further testified that Bridge Foods never told him it would not be responsible for the bill. Ahlemeyer also testified that he had never up to the date of trial sent a bill to John Groffel or Mark Twain because " * * * they never authorized the work."

Ahlemeyer also testified that Groffel gave him no orders or directions and that he did not consult with him and Groffel did not instruct plaintiff not to proceed with the salvaging work. He never told Groffel or anyone else what the charges for the work would be and that sometimes they would work on a basis of "no cure, no pay" but usually plaintiff worked on a time and material basis.

On cross-examination, Ahlemeyer stated that on one of the bills sent to Bridge Foods, one Clark, a marine surveyor, was listed as ordering two barges. The work entailed by this order was valued by plaintiff at $467.50.

Defendant Mark Twain's chief point on this appeal is that under the evidence the plaintiff was not entitled to recover on its verdict director based upon the theory of quantum meruit and that therefore the court erred in denying its motion for a directed verdict.

This court had the same issue before it in the oft-cited case of Kolb v. Howard Corporation, Mo.App., 219 S.W.2d 856 in a well-reasoned opinion by Judge Bennick. We believe the facts in Kolb are analogous to the facts here. The Kolb case involved an action by the widow of Kolb, an architect, for services rendered by him in drawing plans for the construction of a building. It was alleged that the plans were prepared at the instance and request of defendant and were allegedly accepted and used by it in the construction of the building. Defendant insisted that Kolb was employed by one Gutmann, a contractor, in order to assist Gutmann in an attempt to secure a contract for the erection of the building and that Gutmann's proposition was rejected and the building was erected based on plans by another architect. One Puster, who had a close relationship to Galt, the president of the defendant corporation, suggested that Gutmann prepare plans for the building. Gutmann hired Kolb to prepare the plans. Kolb, Gutmann, Puster and Galt met frequently while the plans were being prepared and discussions were had relative to the kind of building that Galt desired. Revisions in the plans were suggested at these meetings and these revisions were made by Kolb. Plaintiff obtained a verdict and judgment based upon quantum meruit. This court reversed the judgment holding that the court should have sustained defendant's motion for a directed verdict.

The court in Kolb stated at l. c. 858 [1, 2]:

"The law of quantum meruit is well understood. Where one person renders valuable services to another which the latter accepts, the law will ordinarily imply a promise to pay the reasonable value of such services. Kostuba v. Miller, 137 Mo. 161, 38 S.W. 946; Crain v. Miles, 154 Mo.App. 338, 134 S.W. 52. The evidence must of course disclose that the one who rendered the services did so under circumstances warranting a proper inference that he expected the recipient of the services to pay for them, and that the latter, in accepting the benefit of the services, was or should have

been aware that they were being performed with that expectation. Tomasso v. Sorbets, Mo.App., 147 S.W.2d 151. In other words, the basis of the recipient's liability, while arising by implication of law, is none the less contractual, since only the person contracting for services may be held personally liable to pay for them, 71 C.J. 37, 113; and 'one may accept the services of another without incurring any implied liability to pay for them, where he knows at the outset that the services are rendered because of an employment by a third person, and but for such knowledge would not have accepted such services'. 71 C.J. 48."

The court then added:

" * * * Consequently, if liability is to be imposed upon defendant, it could only be upon the theory that irrespective of the lack of a precedent request, there was evidence to warrant a finding that defendant accepted Kolb's services, knowing that they were being performed for its benefit, and that Kolb was looking to it for payment."

■ The holding in Kolb is applicable here. It was Schroeder, vice-president and restaurant manager for defendant Bridge Foods who authorized the work. Bridge Foods had close to seven years to run on its 10 year lease with Mark Twain. Bridge Foods also had $283,000 worth of equipment on the boat. Schroeder testified that he called plaintiff two or three times the night the boat sank because "[m]y interest was in saving our possessions and equipment, as manager of the restaurant, and also the boat; * * *." Ahlemeyer kept Schroeder advised of the salvaging that night. It is clear that the plaintiff looked to and expected payment from Bridge Foods. Ahlemeyer stated that he sent the bill to Bridge Foods "because he (Ron Schroeder) is the one that requested our services; he came down there not once, but four times that night." Ahlemeyer also testified that the reason that he had never even up to the date of the trial sent a bill to Mark Twain was because "[t]hey never authorized the work."

■ Here, like Kolb, there is no evidence to warrant a finding that Mark Twain accepted plaintiff's services, knowing that they were being performed for its benefit and that the plaintiff was looking to Mark Twain for payment. In Kolb there were positive actions by the defendant in suggesting revisions in the Kolb plan. However, here the most that can be said regarding the evidence as to the defendant Mark Twain was that Groffel was present at the scene from time to time and he did not order plaintiff to stop its work. This would not establish a case based upon the principle of quantum meruit. Bridge Foods had a substantial interest in saving its $283,000 worth of equipment and had authorized the work.

Groffel's knowledge of the salvage operation in and of itself does not benefit plaintiff for as stated in Kolb at l. c. 859: " * * * But at any rate Galt's knowledge that Kolb was working on the plans did not suffice, in and of itself, to show that he was permitting such services to be performed with the realization that they were being performed for defendant's benefit, and with the expectation on Kolb's part that defendant would pay him reasonable compensation. * * * " This reasoning applies here. The evidence here is that the work was being performed because of the authorization of Bridge Foods and it is clear that plaintiff expected payment from Bridge Foods and at no time even billed Mark Twain.

Again in Bennett v. Adams, Mo.App., 362 S.W.2d 277, the court rejected a recovery based in quantum meruit in an action for services brought by an attorney for the management of an estate. The court pointed out that there was no proof of any expressed or inferred contract for the performance of the services nor was there any proof that the services were requested or accepted; nor was there any

showing that the services were of benefit and value to the recipient.

The Court in Bennett then stated at l. c. 280, 281: "* * * Even though there has been no request, when valuable services or goods are knowingly *accepted* by the party benefiting therefrom under circumstances which would reasonably justify the belief that the party furnishing them expected payment to the extent of their reasonable value, the obligation to pay will be inferred * * *" (Emphasis theirs), citing Kolb as authority for this proposition. Bennett does not aid the plaintiff under the evidence here. On the contrary, the evidence here shows the acceptance of the salvage work was by Bridge Foods which authorized the work, and that the plaintiff performed the salvage work to the credit of Bridge Foods.

Likewise this court in Keeshan v. Embassy Investment Company, Mo.App., 303 S.W.2d 666 cited the Kolb case with approval in discussing a case involving quantum meruit. The court in Keeshan pointed out that ordinarily where services are rendered to another, though without request, if the recipient knowingly accepts the benefits of plaintiff's services recovery can be had under the principle of quantum meruit. As said, we hold that the evidence here does not show a knowing acceptance by defendant Mark Twain of plaintiff's services with the expectation on plaintiff's part that Mark Twain would pay for the services. Accordingly, we hold that the trial court should have sustained defendant Mark Twain's motion at the end of plaintiff's case. Our holding on this point renders unnecessary any ruling upon defendant Mark Twain's remaining allegations of prejudicial error.

## APPEAL BY PLAINTIFF AS TO BRIDGE FOODS.

Plaintiff contends that the court erred in refusing to set aside the verdict and judgment in favor of Bridge Foods and should have entered a judgment in favor of plaintiff "Because All of the Elements Necessary to Support Plaintiff's Claim Were Not Controverted and Were Either Specifically or Tacitly Admitted by Defendant, Bridge Foods, Inc., and Therefore There Were No Disputed Issues for the Jury to Resolve."

 We reject this contention. An examination of the record shows that the plaintiff failed to file a motion for a directed verdict against the defendant Bridge Foods at the close of all the evidence. Plaintiff therefore submitted the question of Bridge Foods' liability as an issue for the jury and is now in no position to insist that the court committed error in failing to order a directed verdict. Heninger v. Roth, Mo.App., 260 S.W.2d 855; Warren v. Weaver, Mo.App., 343 S.W.2d 682.

Accordingly, the judgment against defendant Mark Twain is reversed and the judgment in favor of defendant Bridge Foods is affirmed.

BRADY, P. J., and WOLFE, J., concur.