## MRS. A. M. WALTON v. CHARLES D. CARLISLE, Appellant.

Division One, March 12, 1926,

1. **PLEADING: Justice of Peace: Special Contract: Recovery upon Modification.** Technical rules of pleading applicable to suits originating in circuit courts are not to be applied to suits originating in the court of a justice of the peace. If the statement filed in the justice court is sufficient to notify the defendant of the nature of the cause of action upon which he is sued, and sufficiently definite to bar another action for the same subject-matter, and is not supplanted by a new pleading filed in the circuit court upon appeal, it will not be held that plaintiff sued in the justice court on a special written contract and was allowed to recover in the circuit court upon a modification of such special contract and a waiver of its terms.

2. ————: ————: ————: ————: **Bar to Action.** Where the action originated in the court of a justice of the peace and was appealed, after judgment by default, to the circuit court, in which no further

Walton v. Carlisle.

pleading was filed, the test upon the question whether plaintiff sued on a special contract and was allowed to recover in the circuit court upon another or different contract or cause of action is, did plaintiff's statement filed in the justice court apprise defendant of the nature of the cause of action against him and was it sufficiently definite to bar another action on the same subject-matter? Where plaintiff sued on a written contract for the sale of a large amount of hay, and alleged that in pursuance thereof she shipped two carloads for which defendant refused to pay, and asks judgment for the contract value of the hay, and on appeal it developed that the contract had a time-limit for delivery, but defendant had, without objection, received six carloads after said time-limit had expired, and had objected to and refused to receive the two carloads, shipped after said time-limit had expired, on the ground that the hay was damaged and stained, whereas there was evidence that the hay was not damaged or stained, but in good condition, an instruction authorizing a recovery if defendant waived the time-limit and the hay was not damaged or stained when loaded, was proper, and it will not be held that plaintiff sued on a special written contract and was permitted to recover on a modification thereof; and especially so, where defendant had in writing recognized the contract as applying to the two carloads, and filed no affidavit of surprise.

3. **CONTRACT: Breach: Sales: Waiver.** In a suit for the sale price of hay, sold and delivered under a written contract, defendant cannot insist upon certain of its executory terms and conditions which both parties waived. Where both parties recognized the contract as being still in force despite such executory conditions, which defendant might have invoked, and he insisted upon and continued to receive shipments under the contract, he will not be heard, in a suit for the contract value of the hay shipped and received, to insist that the contract contained an executory provision that if hay was received after ninety days he would pay the plaintiff the estimated value made by three appraisers.

4. ———: ———: ———: **Damaged Goods: Instruction.** Where the contract provided that "no damaged hay is to be loaded," but was otherwise silent as to grade and quality, and defendant's defense, in a suit by the vendor for the contract value of the hay shipped to the vendee, was that the hay was damaged and stained when received and was not of the proper grade, an instruction requiring the jury to find that "the hay was not damaged when loaded" properly covered the issue, and proof that the hay was not damaged or

stained when loaded, but in good condition, authorizes the giving of such instruction.

Estoppel, 21 C. J., Section 118, p. 1116, n. 75; Section 205, p. 1202, n. 21. Justices of the Peace, 35 C. J., Section 226, p. 612, n. 98; Section 228, p. 616, n. 23; Section 229, p. 617, n. 47; p. 620, n. 51; Section 564, p. 836, n. 38. Pleading, 31 Cyc., p. 703, n. 40; p. 704, n. 42; p. 714, n. 49. Sales, 35 Cyc., p. 234, n. 8; p. 261, n. 76.

Transferred from Kansas City Court of Appeals.

Affirmed:

*Roland Hughes* and *Omar E. Robinson* for appellant.

(1)   This suit was based upon a written contract; that contract was filed, and made a part of plaintiff's petition; the contract provides for the delivery, and receipt of all hay sold within ninety days, and the contract pointed out a method of adjusting the differences, if any, between the parties thereto, at the end of the ninety-day period. The suit proceeded upon the theory that the contract was in effect at all times. Not one word is found in the petition about a rescission or modification of that contract. Not a line about a different agreement or a waiver of its provisions, or a consent that it be ignored or disregarded. When counsel for the plaintiff got into the trial of the case, they claimed that by conduct the parties had modified the contract. But no effort was made to amend plaintiff's petition, so as to declare upon a modified or rescinded contract; on the contrary, the case made by the petition stood then, and still stands, upon the written contract sued on in the first instance. When the court came to instruct the jury, the contract sued on was wholly disregarded and ignored. Instruction number one tells the jury that it can return a verdict for plaintiff if it finds that there was an oral modification of the written contract. A litigant cannot declare upon one contract, and recover upon another. Cole v. Armour, 154 Mo. 333; Roaring Fork Potato Growers v. Clemons, 193 Mo. App. 653; Cockrell v. Williams, 195 Mo. App. 400; McNeeley

v. Carlisle, 219 S. W. 145. (2) Contracts stipulating for arbitration are upheld. Agreements for a mode of ascertaining the amount which may come into dispute are valid, and that is precisely what the contract before the court in this case provides, viz.: A method of ascertaining the amount of the hay left on appellee's hands at the end of the ninety-day period. No other construction of that paragraph is possible. 5 C. J. 43, sec. 69; Bales v. Gilbert, 84 Mo. App. 675; Murphy v. Ins. Co., 61 Mo. App. 323; McNees v. Ins. Co., 61 Mo. App. 335, 69 Mo. App. 232; Dautel v. Ins. Co., 65 Mo. App. 44; Vining v. Ins. Co., 89 Mo. App. 311; Carp v. Ins. Co., 104 Mo. App. 502; Fowble v. Ins. Co., 106 Mo. App. 527; Hamilton v. Ins. Co., 136 U. S. 242.

*O. M. Edmonson* and *Spurgeon L. Smithson* for respondent.

(1) It was proper to permit plaintiff to plead the contract and prove a modified contract, because this case originated from a justice court. Metz v. Eddy, 21 Mo. 13; Walker v. Guthrie, 102 Mo. App. 420; Herrick v. Maness, 142 Mo. App. 399; Chamberlain v. Thompson, 213 S. W. 497. (2) The contract having been modified and performed as modified there was no occasion for any appraisement or other action by respondent. (3) The appellant cannot take advantage of his own failure to escape liability on the contract. 13 C. J. 647, sec. 721; Press v. George, 106 Atl. 352; Simons v. Schisby, 238 S. W. 813. (4) Appellant waived any error as to variance between the pleading and the proof, by not filing affidavit showing in what respect he had been misled. Sec. 1272, R. S. 1919; Newton v. Harvey, 202 S. W. 251.

SEDDON, C.—This action was commenced before a justice of the peace within and for Kaw Township, Jackson County, upon the filing by plaintiff (respondent here) of the following Statement on Contract: "Comes now

Walton v. Carlisle.

the above-named plaintiff and for her cause of action against the above-named defendant, states that on or about the 22nd day of March, 1920, she entered into a contract with the defendant for the sale and purchase of a large amount of hay owned by the plaintiff which said hay was then located at and near the town of Richards, in the State of Missouri, to be delivered and paid for according to the terms of said contract, a copy of which is hereto attached and made a part hereof, marked 'Exhibit A.'

"Plaintiff further states that pursuant to said contract, and on or about the 23rd day of July, 1920, she shipped to the defendant at Kansas City, Missouri, one carload of the hay sold under said contract, which said hay was shipped in car Missouri Pacific No. 32857, and also one carload of hay shipped by the plaintiff to the defendant, under the terms of said contract, contained in Southern No. 11186, which said car was shipped on or about the 24th day of September, 1920.

"Plaintiff further states that the value of the hay contained in said cars above mentioned, is, according to the terms of said contract, the sum of five hundred dollars, which the defendant by his said contract agreed to pay plaintiff therefor; that demand has been made of defendant by the plaintiff for the payment of said sum of $500, but the defendant refused and still refuses to pay the same.

"Wherefore, plaintiff prays judgment against the defendant in the sum of five hundred dollars, with interest thereon at the rate of six per cent per annum, from October 1, 1920, the date of demand, and for her costs." Defendant filed no pleading thereto.

Plaintiff recovered judgment in the justice's court by default, whereupon defendant (appellant here) appealed to the Circuit Court of Jackson County, where a trial was had *de novo* before a jury, resulting in a verdict and judgment for plaintiff in the sum of $500, from which judgment defendant appealed to the Kansas City Court of Appeals,

which latter court reversed the judgment *nisi* and re-
manded the cause for a retrial upon the ground that plain-
tiff had sued upon a special written contract and had
recovered upon a modification thereof.  The Kansas City
Court of Appeals, however, deeming its decision to be in
conflict with the decision of the Springfield Court of Ap-
peals in Chamberlain v. Thompson & Company, 213 S. W.
496, certified and transferred the cause to this court for
our determination.

Plaintiff was the owner of a large quantity of hay
located at or near Richards, Missouri. One T. E. Belkham
bought this hay for defendant, receiving from defendant
a commission of fifty cents per ton for his services.  The
sale was consummated by a written contract between
plaintiff, as party of the first part, and defendant, as
party of the second part, dated March 22, 1920, whereby
plaintiff sold said hay to defendant, f. o. b. cars at Rich-
ards, Missouri, at a stipulated price per ton, delivery
as cars furnished, but within thirty days from date,
weights determined at time of loading on cars at Richards,
Missouri.  The contract was executed on March 22, 1920,
by plaintiff, through her agent, one Fred Wilmot, and by
defendant, Charles D. Carlisle, in person.  The written
contract contained these provisions:

"Should party of the second part, by reason of car
shortage, be unable to secure cars necessary for above
hay movement within thirty days from date, then an ad-
ditional time of not to exceed sixty days may be taken
by second party, if the car situation is such that this ad-
ditional time is necessary to secure movement.

"At the end of the ninety-day period above men-
tioned, party of the second part will receive all of the
above-described hay at all events; and will pay party of
the first part upon estimate of three disinterested persons
for all hay left on his hands at the end of said ninety-day
period, to be selected one by party of the first part, one by
party of second part, and these two selected to choose the
third, upon the basis of prices hereinafter named.

313 Mo. Sup.—18.

"Party of the second part agrees to pay party of the first part, at Ft. Scott, Kansas, through T. E. Belkham, the amount shown due by party of the first part upon certificate of weights at the time of the completion of the loading of each car of hay. . . .

"No damaged hay is to be loaded and all cars to be loaded over 20,000 lbs. unless party of the first part pay excess freight to destination.

"The estimate of the three disinterested persons above referred to, upon which settlement shall be made at the end of ninety-day period, is subject to correction according to actual weights upon basis per ton prices hereinbefore mentioned when shipments actually are made; but party of the second part shall be subject to such reasonable charges as may be made for storage of said hay for the additional period after said ninety-day period.

"It is understood, that at the end of said ninety-day period from this date, should any of said hay be left on first party's hands, she may, at her option, declare this contract, so far as such hay is concerned, terminated, and may sell said hay on the market at that time, charging party of the second part for any deficiency that may occur between the price obtained and the price herein contracted for."

The evidence discloses that there was a shortage of cars during the spring and summer of 1920, and that plaintiff's agent, Wilmot, in order to get cars promptly in which to ship the hay sold under the contract, applied to the several railroads for cars to be set or placed, not only at Richards station, but at other stations in the vicinity, so that the hay was actually loaded on the cars at several stations, including Richards. By arrangement made through Belkham, defendant allowed and paid plaintiff for the additional cost of drayage to those stations which required a longer haul than to the station at Richards. Nineteen carloads of hay in all were shipped to defendant. The ninety-day period referred to in the written

contract expired on June 20, 1920. Eleven cars of hay
were shipped within said ninety-day period, and eight
cars, including the two cars in controversy, were shipped
after the expiration of said ninety-day period. On June
14, 1920, only six days before the expiration of said ninety-
day period, defendant wrote a letter to plaintiff's agent,
Wilmot, as follows:

"As far as making an effort to get this hay out, we
have made every effort that we could. *We have this
Timothy sold and our customers are pushing us for de-
livery,* but Mr. Belkham has advised us that he has done
everything he could to get the cars and we have written
numerous letters to the agents and superintendents of
the various roads trying to get cars set in, but without
avail. We would be more than pleased to get all of this
stuff loaded out right away and if you can offer any sug-
gestions that will help us to get cars, we will be mighty
glad to hear from you." (Italics ours.)

Nothing was done by either party to the written con-
tract, at the end of said ninety-day period, with respect
to the selection of appraisers or the making of an estimate
of the quantity of unshipped hay, as provided in said
contract. Neither did plaintiff, at the end of said ninety-
day period, elect to exercise the option to declare the con-
tract terminated and sell the remaining hay on the mar-
ket, charging defendant for the deficiency between the
price obtained and the contract price. Obviously, these
provisions of the contract were ignored or waived by both
parties; at least, they were not insisted upon by either
party. When the ninety-day period had nearly trans-
pired, Wilmot, plaintiff's agent, went to see Belkham,
who thereupon asked Wilmot "to keep on shipping the
hay. Mr. Belkham assured me that the Carlisle Commis-
sion Company wanted to get the hay out, and for me to
continue the shipments *as they had the hay sold.*" (Ital-
ics ours.)

The evidence tends to show that Belkham acted in
behalf of defendant in most of the details relating to the

transaction between the parties. The terms of the written contract were arranged by plaintiff and Belkham, representing defendant. The contract provides that payment for the hay is to be made through Belkham. Appellant's letter of June 14, 1920, discloses that Belkham endeavored to get cars in which to transport the hay. Belkham made the arrangements for the places and times of loading and shipment and instructed plaintiff's agent as to the destination of the various shipments. The weights and bills of lading covering the several shipments were delivered by plaintiff's agent to Belkham, who issued and delivered to plaintiff drafts drawn on defendant in payment of the respective shipments. After the expiration of the ninety-day period prescribed in the contract, six carloads of hay were shipped to and paid for by defendant at the price named in the written contract.

Relative to the two carloads of hay in controversy, the first car was shipped to defendant at Kansas City on July 23, and arrived at its destination on July 29, 1920. Defendant refused to accept the car and sent a telegram to plaintiff on July 29, 1920, that the car was "rejected account damaged hay. Advise disposition." On the same day, defendant wrote a letter to plaintiff confirming the telegram and furthermore stating: "We herewith hand you inspection covering this car and beg to call your attention to the fact that *our contract plainly specifies* no stained nor damaged hay shall be loaded. Furthermore, *the contract specifies* for Standard and No. 2 Timothy. We are enclosing your inspection certificate showing the car graded No. 3 Timothy part stained and damaged." (Italics ours.) On August 5, 1920, defendant telegraphed plaintiff's agent that the car was unsold and that defendant was "awaiting authority to handle your account. Wire us quick what to do." Defendant confirmed the telegram by letter on the next day. Plaintiff's agent refused to authorize defendant to sell the carload of hay on plaintiff's account, stating to Belkham, that "the car was shipped under contract in good faith,

and I expected it to be taken up and paid for as such.''
Subsequently, defendant sold the car of hay, and on Au-
gust 20, 1920, mailed to plaintiff a check for $72.52, repre-
senting the net proceeds of the sale. Plaintiff refused to ac-
cept the check, tendered it back to defendant, and de-
posited it with the clerk of the court upon the trial of
this action.

The second car of hay in controversy was shipped to
defendant at Kansas City on or about September 24, and
on September 29, 1920, defendant telegraphed plaintiff's
agent that the car "grades three. *No contract* with you
*this grade* hay. Advise disposition.'' (Italics ours.) The
telegram was confirmed by letter of the same date. On
September 28, Belkham delivered to plaintiff's agent a
draft drawn on defendant in payment of this car of hay,
but defendant refused to pay the draft on presentation.
On October 8, 1920, defendant wrote plaintiff's agent,
"We have today sold for your account a car of No. 3
Timothy at $13 per ton.''

Plaintiff's evidence was to the effect that the hay
loaded on the two cars in controversy was not damaged or
stained, but was in good condition, when loaded upon the
cars. The written contract of the parties, by its terms,
does not require the delivery of any specified *grade* of
hay.

Defendant offered a demurrer to the evidence at the
conclusion of the trial, which the trial court refused to
give.

Plaintiff's Instruction No. 1 required the jury to find
and believe from the evidence that "after making the
written contract introduced in evidence, the plaintiff and
T. E. Belkham by oral agreement modified the said con-
tract as to the time of performance and as to the place of
shipment, and if you further find and believe from the
evidence that T. E. Belkham was the agent of defendant
and that he was acting within the scope of his authority
in thus making the said modifications and that the de-
fendant ratified the said oral agreement and modification

of the written contract of his said agent, if you find he was such agent, by accepting and paying for the shipment of hay, if you so find, and by conduct in failing to complain or object to said modification, and if you further find and believe from the evidence that the plaintiff shipped the two said cars in controversy pursuant to and in substantial compliance with the said contract as modified, and if you further find and believe from the evidence that the hay in both of the two said cars in controversy was not damaged when loaded by the plaintiff, then your verdict shall be for the plaintiff.''

Plaintiff's Instruction No. 2 was on the measure of damages.

I. Appellant assigns as error the overruling of his demurrer to the evidence and the giving of plaintiff's instructions numbered one and two, respectively. The ground of the assignment is that plaintiff's statement is bottomed upon a special written contract, whereas the proof shows either that the two carloads of hay in controversy were shipped under the written contract as modified or that the written contract was rescinded before the shipments in controversy were made. In other words, appellant contends that, while the statement filed in the justice's court counts on a special contract, when the circuit court instructed the jury, the special written contract sued upon was wholly disregarded and ignored.

Pleading in Justice Court: Suit on Special Contract: Recovery upon Waiver.

In support of his contention, appellant leans upon Cole v. Armour, 154 Mo. 333; McNeely v. Carlisle (K. C. C. A.), 219 S. W. 145; Roaring Fork Potato Growers v. Produce Co., 193 Mo. App. 653; and Cockrell v. Williams, 195 Mo. App. 400, which cases hold, in effect, that a party plaintiff cannot sue upon a special contract and recover upon another and different contract or cause of action. However, the three cases last cited, supra, originated in the circuit court, where the more technical rules of pleading laid down by the code of civil procedure apply. Be-

sides, in each of the cited cases, there was either a total failure of proof or the proof tended to disprove the special contract declared upon. Cole v. Armour, supra, was an appeal taken from the probate court upon that court's refusal to allow a claim or demand against a decedent's estate, and, when the cause reached the circuit court on appeal, the claimant filed therein an amended petition, counting upon a special verbal contract with decedent. The evidence developed a cause of action for money had and received or a *quantum meruit* for work and labor done and services performed, and it was rightly ruled that, having elected by his amended petition to stand upon a special contract, plaintiff could not recover upon a wholly different cause of action.

The instant suit, however, originated in a justice's court, upon the filing by plaintiff of a statement of the facts constituting the cause of action upon which her suit is founded. Section 2735, Revised Statutes 1919, provides: "No formal pleadings upon the part of either plaintiff or defendant shall be required in a justice's court, but before any process shall be issued in any suit, the plaintiff shall file with the justice the instrument sued on, or a statement of the account, or of the facts constituting the cause of action upon which the suit is founded . . ."

It has been repeatedly ruled, not only by this court, but by the several Courts of Appeals, that the technical rules of pleading applicable to suits originating in the circuit court should not be enforced in suits originating in a justice's court. [Meyer v. McCabe, 73 Mo. 236; Iba v. Railroad Co., 45 Mo. 469; Metz v. Eddy, 21 Mo. 13; Walker v. Guthrie, 102 Mo. App. 420; Herrick v. Maness, 142 Mo. App. 399; Tanhoff v. Weinberg, 239 S. W. 148; Chamberlain v. Thompson & Co., 213 S. W. 496.]

In Jarrett v. Mohan, 142 Mo. App. 29, the test of the sufficiency of a statement filed in the justice's court is aptly stated by GRAY, J., who said (1. c. 32) : "The law is well settled in Missouri, that the court of the justice of the

peace is a tribunal designed and intended for the convenience of parties litigant, in which parties may appear and settle their lawsuits without the aid of attorneys. Section 3852, Revised Statutes 1899 [Sec. 2735, R. S. 1919], provides no formal pleadings shall be required on the part of either party; and the final test has always been: Is the statement sufficient to notify the defendant of the nature of the cause for which he is sued, and sufficient and definite to bar another action for the same subject-matter? [Hammond v. Berkowitz, 123 S. W. 502.]'' This test has been uniformly followed and applied. [Iba v. Railroad Co., 45 Mo. 469; Tanhoff v. Weinberg, 239 S. W. 148, and cases there cited.]

Applying the foregoing test in the instant suit, we think it is clear that plaintiff's statement fully apprised defendant of the nature of the cause for which he was sued and is sufficiently definite to bar another action for the same subject-matter. The statement of plaintiff's cause of action, originally filed in the justice's court and upon which the cause was tried *de novo* in the circuit court, cannot be said to have misled defendant as to the nature of the action upon which he had been sued and which he was called upon to defend. The appellant, by requesting plaintiff to continue to make shipments of the remainder of the hay covered by the written contract and by accepting six carloads of said hay and paying therefor the price fixed by the written contract after the expiration of the ninety-day period therein mentioned, recognized and treated the contract as being then in force and executory and applicable to shipments of the hay made after the expiration of the ninety-day period. In fact, appellant in his letter of July 29, 1920 (more than a month after the expiration of the ninety-day period referred to in the written contract declared upon in plaintiff's statement), in giving the respondent the reason for the rejection of one of the cars in controversy, recognized the written contract as being applicable to that shipment by stating, ''We beg to call your attention to the fact that *our*

*contract plainly specifies* no stained nor damaged hay
shall be loaded.''

Moreover, if there is any discrepancy between the
*allegata* and *probata* in the case at bar, we believe it
amounts to mere variance rather than a total failure of
proof.   Section 1272, Revised Statutes 1919, provides:
''No variance between the allegation in the pleading and
the proof shall be deemed material, unless it has actually
misled the adverse party, to his prejudice, in maintaining
his action or defense upon the merits; when it shall be al-
leged that a party has been so misled, that fact shall be
proved to the satisfaction of the court, by affidavit show-
ing in what respect he has been misled, and thereupon the
court may order the pleading to be amended upon such
terms as shall be just.''

Appellant filed herein no affidavit of surprise, show-
ing wherein he has been misled, as required by the stat-
ute.   Having failed to avail himself of the provisions of
the statute, appellant will not be heard to complain in
the appellate court, but will be deemed to have waived the
variance.   [Fisher & Co. Real Estate Co. v. Realty Co.,
159 Mo. 562; Harrison v. Lakenan, 189 Mo. 581; Mellor
v. Ry. Co., 105 Mo. 455; Schneider v. St. Joseph Ry., L. H.
& P. Co., 238 S. W. 468; Bammert v. Kenefick, 261 S. W.
78; Rundelman v. Boiler Works Co., 178 Mo. App. 642.]
The fact that this suit is one originally begun before a
justice of the peace does not affect the application of the
above rule.   [Rundelman v. Boiler Works Co., supra.]

II.   Appellant next urges that plaintiff cannot sue
upon the written contract without first bringing herself
within its terms and conditions, and that the proof shows
that she made no effort upon her part to com-
Waiver:    ply with the provisions of the contract with
Executory
Condition.   reference to the appointment of appraisers.
However, as we have heretofore remarked,
that provision of the contract was waived by the
parties, for neither party insisted upon the appoint-

ment of appraisers but treated and recognized the contract as being in force and executory after the expiration of the ninety-day period prescribed therein. Appellant, by requesting plaintiff to continue to make shipments of the balance of hay covered by the contract and by accepting and paying for six carloads of said hay shipped to him by plaintiff after the expiration of said ninety-day period, will not be heard to deny the waiver of the contract provision relating to the selection of appraisers.

III. As to the issue whether the hay shipped in the two cars in controversy was damaged so that it did not comply with the terms of the written contract, we think that issue was properly submitted to the jury by plaintiff's instruction numbered 1. The contract provides that

Instruction. "no *damaged* hay is to be loaded." Other than said requirement, the contract is silent as to the *grade* and *quality* of the hay to be loaded. Plaintiff's proof was to the effect that the hay loaded on the two cars in controversy was not damaged or stained, but was in good condition, at the time of loading on the cars. It was for the jury to say, under plaintiff's Instruction 1, whether the hay in controversy was damaged when loaded by plaintiff on the cars. The jury, by their verdict, resolved that issue in favor of plaintiff.

We find no reversible error in the record before us. It follows that the judgment *nisi* should be affirmed, and it is so ordered. *Lindsay, C.,* concurs.

PER CURIAM:—The foregoing opinion by SEDDON, C., is hereby adopted as the opinion of the court. All of the judges concur.