STATE OF MISSOURI at the Relation of ELECTRIC HOUSEHOLD STORES, INC., Doing Business as THOR ELECTRIC SHOPS, Relator, v. JEFFERSON D. HOSTETTER, WILLIAM DEE BECKER and EDWARD J. McCULLEN, Judges of the St. Louis Court of Appeals.—89 S. W. (2d) 28.

Division One, December 18, 1935.

80

*Louis Lowell Hicks* and *Vogel & Field* for relator.

*Foristel, Mudd, Blair & Habenicht* for respondents.

HAYS, J.—Certiorari to the St. Louis Court of Appeals, bringing up the record in the case of Cameron v. Electric Household Stores, Inc., doing business as Thor Electric Shops. In due course that case reached the circuit court on appeal, where upon a trial plaintiff recovered a verdict and judgment for $300. This judgment was affirmed by the Court of Appeals.

Dr. Solomon Cameron, a physician, sued the defendant corporation for professional services. The statement filed with the justice of the peace alleged that "the defendant is indebted to the plaintiff

for professional services rendered Richard B. Callahan at the special request of defendant between the dates of February 3 and April 5, 1930,'' in the sum of $450; alleged also plaintiff's demand made for payment and defendant's refusal and failure to pay, and prayed judgment.

In the trial in the circuit court the defendant's instruction in the nature of a demurrer to the evidence, offered at the close of the case, was refused. The Court of Appeals in its review of the record below affirmed the judgment, and such decision is claimed by the defendant to be in conflict with the latest controlling decisions of our court.

■  The first claimed conflict is in respect of the Court of Appeals' holding that said statement contained sufficient facts to constitute a cause of action. Our cases of Hill v. St. Louis Ore & Steel Co., 90 Mo. 103, 2 S. W. 289; Butts v. Phelps, 79 Mo. 302, and Hunicke v. Meramec Quarry Co., 262 Mo. 1. c. 576, 172 S. W. 43, are cited in support of this claim. These cases applied the fundamental rule that ''statements before justices of the peace must advise the opposite party of the nature of the claim and be sufficiently specific to bar another action.'' In the Butts case the statement was as follows:

''Plaintiff states that defendant is indebted to him in the sum of $50.00 lawful currency, for which he asks judgment.''

In the Hill case the statement was in the form of an account, alleging that the defendant was indebted to plaintiff for boarding certain designated persons, in varying sums. The disparity between those statements and the one at hand is too obvious to require comment. The essential difference is that the one in this case contains an allegation that the services were rendered ''at the special request of the defendant,'' whereas the others did not. The necessity of an allegation that the services were rendered at defendant's request may be illustrated by the petition which was under consideration in Wells v. Pacific Railroad, 35 Mo. 164, and which alleged, ''that one William Miller, and two other persons who were then employed as agents and servants of defendant, were injured by collision on the road of defendant, and plaintiffs were called upon as physicians by the agent of said company to attend to said employees so injured; that, at the instance and request of the *agent* of defendant, plaintiffs rendered their services as physicians to said persons injured and for which plaintiffs say that defendant owes them.'' In reversing and remanding the case our court said: ''The petition is defective in that it does not allege any promise by the *defendant,* or any fact from which the law would imply a promise. The allegation that the services were rendered at the instance and request of the *agent* of the defendant, is not an averment that they were rendered at the instance and request of the defendant itself. The defendant was not liable for the personal expenses of its servants or employees, unless

such liability was assumed by contract; and if such contract shall have been made by a supposed agent of the defendant, the authority (special or general) of the agent must be proved as in any other case.'' Both the petition in that case and the one in the present case were substantially in the form of a common-law declaration on *quantum meruit*, one of the common counts *in assumpsit*; and in such an action the promise of the defendant is by the law implied from the request. In the case at bar there was an express contract—and express contracts are admissible in evidence in *quantum meruit* actions—shown to have been made by the relator's general manager and vice-president. That case originated in the circuit court, wherein pleadings are more strictly construed than in justices' courts. As is stated in Iba v. Railroad, 45 Mo. 469, the latter ''are popular tribunals, before which ordinary disputes can be adjusted without the aid of attorneys; and it would defeat the end of their organization if the rules of practice and pleading found necessary in courts of record were applied to their proceedings.'' [See, also, Walton v. Carlisle, 313 Mo. l. c. 279, 281 S. W. 402.] We are of the opinion that the allegations contained in the statement now under review would ordinarily be sufficient as between individuals in a *quantum meruit* action.

However, it is said in Hunicke v. Meramec Quarry Co., supra, that ''When a person requests a physician to perform services for a patient, the law does not raise an implied promise to pay the reasonable value of the service so rendered, unless the relation of the person making the request to the patient is such as raises the legal obligation on his part to call in a physician and pay for the services.'' The remarks just quoted though stating a well-established principle of law, were made *arguendo* in relation to a wholly different state of facts from those involved here; yet, if they be deemed an authoritative announcement and be applicable to the statement here in question, then said statement in legal effect is predicated upon an implied authority in the general manager of relator who made the alleged request of the plaintiff in its behalf. It is, therefore, apparent that the procedural question is, as it happens, identical with the substantive question, viz., implied authority, involved in the respondents' decision under review; and the Hunicke case, supra, has no different ultimate weight on the procedural question than on the other.

As a basis for the consideration of implied authority, the decisive issue in the decision under review, it is necessary to state, briefly, the ultimate facts as they may be collected from the said opinion, and principally those favorable to the plaintiff in the action below.

Defendant, domiciled at Chicago, was engaged in selling electrical household appliances and equipment, and maintained branch stores in many states,—among such branches one at St. Louis, of

which branch said ·Callahan was defendant's manager, with a large number of salesmen under him. Joseph M. Dorband, located at the home office at Chicago, was defendant's vice president and general manager. At the close of a sales campaign conducted by Callahan he, on February 3, 1930, fell seriously ill of pneumonia. He was a stranger in St. Louis and without funds to defray the expenses of his illness. Whereupon one Broderick, a salesmen under him, took it upon himself to notify Dorband, at Chicago, of Callahan's condition and to ask him for instructions. Dorband instructed him to get a physician immediately, to take charge of the store himself and advised him that he would be in St. Louis in a few days. Accordingly, Broderick at once employed plaintiff to attend Callahan. Upon Dorband's arrival he was told by Broderick of the desperate character of Callahan's illness; and acting upon this information, he told Broderick to pay the bills incurred in Callahan's illness out of the store's petty cash fund and to report them in his budget statements. Both of them then went to Callahan's residence, where they met plaintiff. Plaintiff made inquiry about the payment for his services. Dorband in reply assured him the (defendant) company would pay, upon the rendition of plaintiff's bill, for any expense incurred. In the trial Dorband, though admitting calling with Broderick at Callahan's home, denied that he saw or conversed with plaintiff there or anywhere else, and denied that he gave Broderick any authority in the premises. No by-law or record of the defendant touching or limiting Dorband's authority as general manager was shown in evidence.

The essential ground of conflict is now upon relator's contention that no such power could be implied in the present case (absent specific power shown by charter or by-law), the contract of Dorband was *ultra vires* of the corporation, a commercial one, and also beyond the authority of Dorband. Relator cites and relies upon in support of this contention, in addition to the Hunicke case, supra, the following cases: National City Bank v. Carleton D. G. Co., 334 Mo. 339, 67 S. W. (2d) 69; Millinery Co. v. Trust Co., 251 Mo. 1. c. 570, 158 S. W. 359; Fidelity National Bank v. D. G. Co., 293 Mo. 194, 238 S. W. 474; Tucker v. St. Louis, etc., Railroad Co., 54 Mo. 117; Mayberry v. Chicago, etc., Railroad Co., 75 Mo. 492, and Brown v. M., K. & T. Railroad Co., 67 Mo. 122.

The last three of the cited cases are very similar. Tucker v. Railroad, supra, was an action against the railroad company for surgical and medical treatment rendered a brakeman of the company whose leg was injured in being run over by the cars. The station agent of the company, when the brakeman was injured, directed a boy to go for a doctor, and the boy brought the plaintiff who was told by the train conductor to give the wounded man attention and

he would be paid. This court held that such facts were insufficient to fix liability upon the railroad company.

Mayberry v. Railroad, supra, was an action on account by a hotel keeper for boarding and nursing a brakeman injured by a train of defendant. This service was rendered at the instance of the local surgeon of the railroad company. There was no evidence to show specific authority on the part of the surgeon to contract for board and nursing bills.

In Brown v. Railroad, supra, this court held that no recovery could be had against a railroad company for drugs furnished a person who had been injured by the company's locomotive and where the drugs were furnished on the order of a divisional superintendent; there being no proof that the official was authorized to give the order.

It will be noted that in each of the cases the order or request was made by a subordinate officer of apparently limited scope of authority.

National City Bank v. Dry Goods Co., supra, was an action against the dry goods company for practicing fraud on plaintiff bank by means of a false financial statement of the condition of another concern. The fraud was alleged to have been concocted by an individual who was the manager of both concerns. It was held that the manager could not bind the principals in the fraudulent transaction while acting for a third party in such transaction which was beyond the scope of his authority and not within the general business of the principals. The case announces and applies the principle that where a transaction is *ultra vires* of the corporation the agent's acts cannot bind the corporation.

Fidelity National Bank v. Dry Goods Co., supra, announces and applies the principle that a corporation is not liable on its contract signed in its name by its secretary, who was also its credit man, purporting to bind it, in effect, to pay the debt of a third party, where such contract was signed without the knowledge or consent of any other officer of the corporation and had been concealed from them, and where the by-laws prohibited the signing of such an obligation without the concurrence of some other officer of the corporation. The decisive question was estoppel on the part of the corporation by holding out the secretary and credit man as having the authority he exercised in the instance involved.

In Millinery Co. v. Trust Co., supra, the decisive issue was determined under the *ultra vires* rule. There the trust company, with powers defined by statute, had entered upon a business clearly outside the powers prescribed for such institutions by the statute.

The Court of Appeals, at the close of its discussion of implied authority, states its conclusion as follows:

"We think the circumstances shown in the instant case afford ample grounds for presuming that Dorband, as general manager of

defendant, had authority to charge defendant with the employment of a physician to treat the manager of its St. Louis branch, who was suddenly stricken and became desperately ill, among strangers, without adequate funds for the employment of necessary medical attention. Callahan held a responsible position of no little importance in the conduct and operation of defendant's business. Presumably he was specially trained for this position, and was possessed of a knowledge of defendant's business in St. Louis not possessed by any other employee. So that defendant had a direct pecuniary interest in his speedy recovery and his early return to his work.''

We are unable to perceive wherein the Court of Appeals' opinion conflicts with the ruling of this court in any of the cases brought to our attention. The decision of that court deals with the implied authority of the general manager of a business corporation with regard to a particular situation, in which he undertook to bind the corporation for medical attention given to one of its employees at the instance of the manager, and to make a contract in relation thereto on behalf of the corporation. The authorities reviewed above involve no such situation as this and this review discloses that none of our previous decisions has held this principle of law in judgment under any state of facts in any wise similar to that presented in this case.

For the reasons stated our writ issued herein is hereby quashed. All concur.