Elva SONGER, Plaintiff-Respondent,

v.

Ida BRITTAIN, Defendant-Appellant.

No. 7242.

Springfield Court of Appeals.

Missouri.

Oct. 14, 1954.

Tom A. Shockley, Waynesville, for defendant-appellant.

Fields & Low, Lebanon, for plaintiff-respondent.

STONE, Judge.

■ In this case, which comes to the writer on reassignment, plaintiff recovered a judgment of $1,500 for services rendered as housekeeper and practical nurse for defendant and her husband, H. G. Brittain, from January 11 to October 20, 1948. At the outset, we are confronted with plaintiff's motion to dismiss defendant's appeal for failure to. comply with Supreme Court Rule 1:08, 42 V.A.M.S. The initial requirement of Rule 1.08, i. e., "a concise statement of the grounds on which the ju-

risdiction of the review court is invoked," has been ignored entirely in defendant's brief. The second requirement of Rule 1.08 is a "fair and concise statement of the facts * * * relevant to the questions presented for determination" with "specific page references to the transcript on appeal." From a careful review of the transcript, it is plain that defendant's statement of facts is inaccurate, incomplete, argumentative, and subject to the criticism that "a statement which omits the essential facts on which an appellant's adversary relies cannot be deemed a substantial compliance with said rule." Walker v. Allebach, 354 Mo. 298, 189 S.W.2d 282, 283 (3). Under "Allegations of Error and Points Relied on with Authorities," defendant presents five points, four of which are without citation of any authority. The "Argument" develops none of the complaints more fully than in the "Allegations of Error," and there is no specific page reference to the transcript either in the statement of facts or in the argument.

 The opinion originally drafted, but not adopted, sustained plaintiff's motion and dismissed defendant's appeal. From the foregoing, it is apparent that dismissal of the appeal for flagrant violation of Rule 1.08 would be justified [Ambrose v. M. F. A. Co-operative Ass'n of St. Elizabeth, Mo., 266 S.W.2d 647; Supreme Court Rule 1.15]; and, it is just as clear that, even in consideration of the case on the merits, the four allegations of error not developed in defendant's brief by citation of authorities and argument might well be treated as abandoned [Lansford v. Southwest Lime Co., Mo., 266 S.W.2d 564, 565–566(1); Merrick v. Bridgeways, Inc., 362 Mo. 476, 241 S.W.2d 1015, 1019(7); Warinner v. Nugent, 362 Mo. 233, 240 S.W.2d 941, 945(7), 26 A.L.R.2d 278; Palmer v. Lasswell, Mo.App., 267 S.W.2d 492, 498(14); Baker v. Atkins, Mo.App., 258 S.W.2d 16, 22(15)]. For, it is neither the function nor the duty of an appellate court to search the transcript for verification of factual statements [Anderson v. Woodward Implement Co., Mo., 256 S.W.2d 819, 823(5)] or to brief the case for counsel [Ambrose v. M. F. A. Co-operative Ass'n of St. Elizabeth, supra, 266 S.W.2d loc. cit. 651]. However, believing that "our primary duty is to litigants rather than to counsel who represent them" [Ambrose v. M. F. A. Co-operative Ass'n of St. Elizabeth, supra, 266 S.W.2d loc. cit. 650] and recognizing the liberality with which appellate procedural rules have been construed and the leniency with which they have been applied in order that cases might be determined on the merits [Supreme Court Rule 1.28], we have concluded, with considerable hesitancy and reluctance, to overrule plaintiff's motion to dismiss the appeal. We add the cautionary comment that our failure to impose the justified penalty of dismissal in the instant case must not be regarded as a precedent or as any indication that the same policy of condonation will be indulged in the future.

Since defendant contends that the court erred in refusing to direct a verdict for her, a review of the evidence is necessary. Plaintiff, who was 60 years of age in 1948, lived with her husband, to whom she then had been married 41 years, on a farm near Dixon, Missouri. Plaintiff had "kept old people in my home" and had worked in other homes as a practical nurse. For more than 25 years, she had known defendant, about 74 years of age in 1948, and her husband, H. G. Brittain, then about 78 years of age, who lived in Dixon. Mr. Brittain was ill for a period of many months prior to his death in October, 1948. "He had a heart ailment" and had "difficulty with his legs." During 1947, "he stayed in Jefferson City a long while and was treated"; but, he had returned to his home in Dixon when, during the latter part of December, 1947, "he had a bad spell" and was taken to St. Mary's Hospital in Jefferson City. A few days later, plaintiff accompanied defendant, at her invitation, to Jefferson City to visit defendant's husband. However, "he didn't know nobody—he was * * * strapped down in a hospital bed with rails up." Plaintiff returned to Jefferson City on January 11, 1948, and stayed with Mr. Brittain in the hospital until February 1, 1948. "Mrs. Brittain (defendant), her-

self, wanted me (plaintiff) to go there and stay there, and I did."

Plaintiff accompanied defendant's husband when he was returned by ambulance to the Brittain home in Dixon on February 1st. For "a number of weeks he was strapped to the bed." He was "delirious and out of his mind" and at times "violent". Except during the period from March 3 to 22, 1948, inclusive, when Floyd Vernatti, a nephew of the Brittains, stayed with them, and she was at home "because I needed the rest," plaintiff worked steadily at the Brittain home until about two weeks after the death of defendant's husband in October, 1948. She was "on call twenty-four hours a day"—"I was never released on holidays, Sundays or no day."

During May, 1948, defendant, who had been "in bad health for years," fell and broke her hip. As she was being removed by ambulance from the Brittain home, defendant told plaintiff "don't you leave Mr. Brittain," and plaintiff thereafter cared for him while defendant was hospitalized for about five weeks. When defendant returned to her home in June, 1948, a nurse accompanied her and remained in Dixon for three days, after which defendant "was turned over to me (plaintiff)" for care and attention. "Mrs. Brittain wasn't even walking when I (plaintiff) left there." Although Mr. Brittain temporarily improved to some extent so that "with help he could walk," "he was in lots of pain and misery and he demanded attention." Plaintiff slept in the room with Mr. Brittain and ministered to him when he called in the night. With the assistance of others from time to time, plaintiff did the housework, including cooking and dishwashing, and performed the duties of a practical nurse in caring for defendant's husband and, after her hip was broken, for both defendant and her husband. In short, plaintiff did, as she stated it, "everything there was to do that come up in a sick house."

Frankly conceding that she had no definite agreement with defendant as to the rate or amount of compensation, plaintiff's position has been and is that her services were rendered "at the special instance and request of the defendant" and that she is entitled to recover on quantum meruit "a reasonable sum" therefor. And, as we read the record, defendant does not contend seriously that plaintiff might not be entitled to additional compensation (we note that, while addressing plaintiff on cross-examination, defendant's counsel said, "I know you was entitled to money"); but, defendant's position has been and is, as stated in the language of her counsel, "that at no time did the defendant employ the plaintiff, but that she was working for her deceased husband, H. G. Brittain, * * * and that if there was anything due the plaintiff for her labor, it was due from the estate of H. G. Brittain."

On this basic issue as to whether plaintiff's services had been rendered "at the special instance and request of the defendant," plaintiff testified positively that her services were performed at the specific request of defendant; that "Mr. Brittain * * * at no time requested me to stay"; and that, in fact, he was in such condition that, while in the hospital in Jefferson City during January, 1948, and "for weeks and weeks after he come home," he did not "know" plaintiff and thus could not have requested or arranged for her services. Plaintiff also stated definitely that defendant had paid her $90 on March 19, $30 in May, and $50 in June, 1948; and, defendant admitted her signature on a memorandum dated October 18, 1948, reading "Up to date I payed Mrs. Songer $90 in cash—One $30 check, one check $50," although she said that the quoted body of the memorandum was not in her handwriting.

When confronted with them upon trial, defendant admitted authorship of five letters, the first of which dated December 30, 1947, informed plaintiff that defendant's husband had been taken "back to hospital," told plaintiff "I wanted to see you," and asked her to "come up," and four of which dated March 4, 5, 11 and 22, 1948 (during the brief period plaintiff was at home), contained such statements as "I want to

know if you are coming back," "I want you as I said if you will come back," and "when do you think you will be back." In response to defendant's letter of March 11, 1948, in which she wrote "when you come in I want to pay you," plaintiff went to the Brittain home where defendant said "that she would pay me" and gave plaintiff a check dated March 16, 1948, payable to plaintiff's order in blank "for nursing." According to plaintiff, the amount was not inserted in this check, because defendant said "since you are coming back, we will wait and settle it then." Defendant's witness, Mrs. Susan J. Rigsby, testified that she had seen defendant write a check "all but the amount" and "offer it to her (plaintiff)"; that she had heard defendant ask plaintiff "to tell her (defendant) what the amount was she owed and she would put it down in the check"; and, that plaintiff had said "wait until she come back." In her letter of March 22, 1948, to plaintiff, defendant wrote that her husband "had a real bad spell yesterday," inquired "could you come in and stay a few days—if no longer—I think you and I could just do fine with H. G. (defendant's husband)," and importuned plaintiff "please come on— let me know, at once—and I can send after you." Plaintiff returned to work the following day.

█ █ Defendant insists that her motion for a directed verdict should have been sustained because "she could not be liable for debts of her deceased husband," and the only citation of authority in defendant's brief is in support of that general proposition. But defendant apparently misconceives the theory of plaintiff's case which was predicated upon a specific finding that plaintiff's services were rendered "at the instance and request of the *defendant*"— not her husband. It is well-settled that, where there is no family relationship and no showing that the services were performed without expectation of pay, the law presumes an intention on the part of one rendering valuable services at the request of another to charge therefor and implies a promise on the part of the latter to pay the reasonable value thereof, which may

be recovered in quantum meruit. State ex rel. Electric Household Stores, Inc. v. Hostetter, 338 Mo. 79, 89 S.W.2d 28, 29 (2); Sprague v. Sea, 152 Mo. 327, 53 S. W. 1074, 1076(1); Kostuba v. Moeller, 137 Mo. 161, 38 S.W. 946, 949–950; Buelterman v. Meyer, 132 Mo. 474, 34 S.W. 67, 69; Abresch v. Schultz, Mo.App., 216 S. W.2d 134, 139(1); Offord v. Jenner's Estate, Mo.App., 189 S.W.2d 173, 176(2); Tomasso v. Sorbets, Mo.App., 147 S.W. 2d 151, 152(2); Patrick v. Crank, Mo.App., 110 S.W.2d 381, 385(8); Fitzpatrick v. Dooley, 112 Mo.App. 165, 86 S.W. 719, 720; 58 Am.Jur., Work and Labor, Sec. 4, p. 512. In the instant case, plaintiff is entitled to the benefit not only of the promise implied by law that defendant would pay the reasonable value of services rendered at her request but also of the substantial (albeit disputed) evidence that defendant expressly promised to pay plaintiff for her services, although there was no specific agreement as to the rate or amount of compensation.

█ Bearing in mind the trite rule that, at this stage of the litigation, we must consider the evidence in the light most favorable to plaintiff-respondent, must accord to plaintiff the benefit of all favorable inferences arising from the evidence, and must disregard defendant's evidence except insofar as it may aid plaintiff's case [Smith v. Siedhoff, Mo., 209 S.W.2d 233, 234(1); Williamson v. St. Louis Public Service Co., 363 Mo. 508, 512–513, 252 S.W.2d 295, 297(1); Sollenberger v. Kansas City Public Service Co., 356 Mo. 454, 462, 202 S.W.2d 25, 29(2)], we have no doubt but that plaintiff made a submissible case on quantum meruit for services rendered "at the * * * instance and request of [the] defendant". Skillman v. Ballew, Mo.App., 27 S.W.2d 1036, 1038(2); Section 451.290 RSMo 1949, V.A.M.S. Defendant's motion for a directed verdict properly was overruled.

Defendant's principal complaint about plaintiff's only verdict-directing instruction, No. P–1, is that it permitted a verdict for plaintiff "in the absence of any * *

contract between plaintiff and defendant and without any agreed amount that should be paid." Instruction P–1 authorized a judgment for plaintiff only upon express findings, among others, that plaintiff rendered services as housekeeper and practical nurse "at the instance and request of the defendant" and without any understanding "that said labor and services should not be paid for"; and, there was no family relationship between plaintiff and defendant. Under these circumstances, the law implied a promise on the part of defendant to pay the reasonable value of services rendered at her request, as the jury were told in instruction P–1, and proof of an express agreement fixing the rate or amount of compensation to be paid for plaintiff's services was not essential to her recovery. See authorities cited supra.

■■■■ Defendant's other complaint about instruction P–1 is that "it fails to declare the law * * * on the theory of the defendant that the plaintiff was not employed by her." We think the instruction not subject to the quoted criticism, for it required an affirmative finding upon the issue as to whether plaintiff had been employed by defendant, viz., a finding that plaintiff's services were rendered "at the instance and request of the defendant." But, *even if* plaintiff's instruction P–1 were in any wise deficient in submission of defendant's theory of the case, the instruction could not be condemned as erroneous since it submitted the elements necessary to plaintiff's recovery and defendant's instructions D–1, D–2 and D–3 fully submitted the defense pleaded. Lansford v. Southwest Lime Co., supra, 266 S.W.2d loc.cit. 569(8), and cases there cited; Abresch v. Schultz, supra, Mo.App., 216 S.W.2d loc.cit. 140(11). "(A)ll instructions must be read and construed together, and where, taken together, they do contain a complete exposition of the law and cover every phase of the case, a verdict obtained thereon will be sustained, although some of the instructions taken separately may be incomplete and open to criticism." Higgins v. Terminal R. Ass'n.

of St. Louis, 362 Mo. 264, 241 S.W.2d 380, 387(20). Plaintiff's instruction P–1 was not prejudicially erroneous in any particular assigned.

■■■■ Defendant urges error in the giving of plaintiff's withdrawal instruction P–3. Having been assured by defendant's counsel in the course of his opening statement, and subsequently during the trial, that he could prove an "affair" between plaintiff and defendant's husband and could adduce competent evidence in support of the contention that "whatever labor * * * she (plaintiff) performed in the home of H. G. Brittain was for the said H. G. Brittain out of her love for him, or for money he had previously given her," the trial judge was persuaded not only to permit defendant's counsel to charge in his opening statement that "she (plaintiff) was his (H. G. Brittain's) girl friend" and that "this affair continued * * * for years," but also to accord wide latitude to defendant's counsel in his examination of witnesses. At the conclusion of the testimony, the court gave plaintiff's instruction P–3 by which the jury were told "that there is no substantial evidence * * * of any misconduct between the plaintiff and H. G. Brittain * * * and that matter is withdrawn from the consideration of the jury." The giving or refusal of withdrawal instructions is within the sound discretion of the trial judge and, unless that discretion is abused, his action will not be disturbed. Stephens v. Kansas City Gas Co., 354 Mo. 835, 191 S.W.2d 601, 608(15); Atchison v. Weakley, 350 Mo. 1092, 169 S.W.2d 914, 917(3); Kick v. Franklin, 345 Mo. 752, 137 S.W.2d 512, 516(12). Since painstaking review of the entire record impels the same conclusion on our part, namely, "that there is no substantial evidence * * * of any misconduct between the plaintiff and H. G. Brittain," we cannot say that there was any abuse of sound judicial discretion in withdrawing that highly prejudicial subject from consideration by the jury. Winkler v. Macon Gas Co., 361 Mo. 1017, 238 S.W.2d 386, 392(8).

**22**

Defendant also complains because a new trial was not granted upon an affidavit by W. T. Harrington, one of the nine jurors signing the verdict for plaintiff, to the effect that he had been "under the impression and believed" that the judgment "would be paid out of the money belonging to the estate of H. G. Brittain, deceased, * * * and that, if he had known at the time that the verdict was against Ida Brittain individually, he would not have agreed to or signed said verdict." On considerations of public policy, it has long been established that a juror may offer evidence in support of a verdict but not to contradict or destroy it [Chrum v. St. Louis Public Service Co., Mo., 242 S.W. 2d 54, 56(3), and cases there cited; Ingram v. Poston, Mo.App., 260 S.W. 773, 775(2)], and that a juror may not impeach a verdict by asserting that it "was the result of a misapprehension" [New York Store Mercantile Co. v. Chapman, 89 Mo.App. 554, 555] or by declaring "an intent different from that expressed in the verdict returned in open court" [The State ex rel. Rogers v. Gage Bros. & Co., 52 Mo.App. 464, 470(3)]. And this fundamental policy is as applicable and compelling where the verdict has been signed by nine jurors as where it has been unanimous. Leahy v. Tesson, 108 Mo.App. 372, 83 S.W. 781. Defendant's complaint predicated on the affidavit of juror Harrington is without merit.

Finally, defendant assigns error because "the court refused the offer" of Exhibit C, which was a motion by Clyde A. Songer, plaintiff's husband, "to have citation issued to those entitled to administer" in the estate of H. G. Brittain, deceased. But, examination of the transcript discloses that Exhibit C, although identified, was not offered in evidence. There having been no adverse ruling by the trial court, nothing is before us for review as to Exhibit C. Section 512.160(1) RSMo 1949, V.A.M.S.; Gann v. Chicago, R. I. & P. Ry. Co., 319 Mo. 214, 6 S.W.2d 39, 46(10); Lochmoeller v. Kiel, Mo.App., 137 S.W.2d 625, 630(10); Chambers v. Sovereign Camp, W.O.W., Mo.App., 33

S.W.2d 1029(2). Furthermore, since no allegation of error as to Exhibit C was presented to the trial court in defendant's motion for new trial, no such error has been preserved for appellate review. Supreme Court Rule 3.23.

Finding no reversible error in any particular assigned and presented for review, the judgment is affirmed.

McDOWELL, P. J., concurs.