R. P. SMITH, d/b/a Cape Asphalt Paving Company, Appellant,

v.

RAY M. DILSCHNEIDER, Inc., a Corporation, Respondent.

No. 44604.

Supreme Court of Missouri.

Division No. 2.

Nov. 14, 1955.

R. P. Smith, Cape Girardeau, for appellant.

Elliott P. Koenig and Vern H. Schneider, St. Louis, Rassieur, Long & Yawitz, St. Louis, of counsel, for respondent Ray M. Dilschneider, Inc.

DEW, Special Judge.

The plaintiff sued to recover from the defendant the reasonable value of work and labor alleged to have been furnished to the defendant under a subcontract in the construction of an airport at Gideon, Missouri. The defendant filed an answer denying liability and pleading breach of the contract by plaintiff, and filed a counterclaim for damages for such breach. At the close of the plaintiff's evidence the defendant offered a motion for a directed verdict in its favor, which the court sustained. Thereupon the defendant dismissed its counterclaim. From the judgment rendered on the directed verdict the plaintiff has appealed.

According to the petition the defendant was a general contractor for the construction of an airport and through exchange of correspondence entered into a written subcontract with the plaintiff for the various classifications of excavation named in the correspondence in the various quantities therein specified and at the various prices designated. The contract provided that the unit prices were based on the right of the plaintiff to perform all of the work covered by the classifications and for the prices named. The proposal was accepted by letter from the defendant subject to the plans and specifications of the project. The petition alleged further that the contract provided for certain progress payments to be made to the plaintiff which the defendant failed and refused to make; that plaintiff furnished the labor and material under said contract in the reasonable value of $29,447.-16 on which the defendant has paid $8,581.-88, leaving due the plaintiff the sum of $20,865.28, for which judgment is asked with interest from November 2, 1951, the date of the last work performed.

By its answer defendant, among other matters, admitted that a contract had been made by the defendant, as pleaded, except as to the exact date; denied that the unit prices were applicable only in the event that plaintiff should complete all of the work contemplated by the contract; denied that it had breached any agreement to make progress payments; or that the work was halted at any time due to the breach of the contract by the defendant; or that the plaintiff, upon the cessation of his operations, was entitled to the reasonable value

of the work and labor specified; or that it had failed to make any payments due the plaintiff, and pleaded that it had made certain payments to plaintiff's creditors on the project, and had refused to make other payments because they were not due to the plaintiff; that it had been agreed that 10 per cent of the amounts due were to be retained by the defendant until completion of the job and approval thereof by the engineer; that plaintiff, as a condition precedent to the progress payments, had agreed to furnish lien waivers on lienable items, and that on numerous occasions plaintiff was requested to complete the work contemplated by his agreement, but failed to do so.

Further answering, the defendant filed a counterclaim and pleaded therein that under its general contract it had agreed with the owners to be subject to a liquidated damage of $30 a day for delay in the performance of his general contract; that it had entered into the subcontract with the defendant to furnish the labor and materials for a certain portion thereof on a unit price basis, with the final amount due subject to the approval of the consulting engineer upon final check of the total unit completed by the plaintiff; that plaintiff was notified June 19, 1951, to proceed with the work for which he had contracted; that plaintiff continued to work upon the project until on or about November 9, 1951, at which time plaintiff had completed approximately one-half of the job for which he had contracted, and that regardless of the repeated requests of the defendant so to do, plaintiff refused and failed to perform further work on the project, thereby breaching the terms of said contract; that due to plaintiff's improper finishing of the gravel in the roadway at the airport, improper drainage resulted and additional grading and additional gravel were required to repair the same; that due to plaintiff's delay in making proper preparations for the winter season, large quantities of dirt were washed into the apron and taxiways of the airport, requiring additional work for its repair; that further damage was thereby caused to the existing runway; that by reason of the plaintiff's breaches of the contract, it was necessary for defendant to employ another contractor to complete the job which plaintiff had contracted to perform; that, to conform to the general contract, it was necessary to employ another contractor to repair the damage by reason of such delay and faulty work, for which defendant paid the sum of $2329.80, which was a proper value of the goods and services furnished. The counterclaim further provides that the defendant was required to complete the project free of all liens and claims, and that plaintiff had failed to pay certain bills for labor and material, which bills the defendant was required to pay in the sum of $910.11. The counterclaim further stated that defendant, by reason of plaintiff's breaches of the contract, was subjected to liquidated damages under its general contract with the city at the rate of $30 a day for the delay. The counterclaim prayed judgment for $3,239.91, less $1,107.49, the total sums withheld by the defendant in accordance with the agreement for progressive payments, with interest on such balance of $2,132.42, from date of filing of the counterclaim.

According to the plaintiff's evidence he wrote a letter to the defendant on May 5, 1951, proposing to perform eight items of certain quantities of different classifications of excavation at prices named therein, all of which to constitute a subcontract for the construction of an airport at Gideon, Missouri. This proposal was accepted in writing by the defendant on June 7, 1951. By oral agreement two additional items were added thereto. It was further agreed orally that plaintiff would be paid monthly 90 percent of the work completed as disclosed by the engineer's estimates. It is claimed by the plaintiff that defendant failed to make the progress payments as agreed and because of such breach of the defendant's contract, plaintiff ceased his performance of the subcontract and brought this action for reasonable value of the work done by him thereunder. According to plaintiff's computation the work for which he contracted would amount to a total of $21,218.15, based on the contract price. He

acknowledges credits by advances for materials and otherwise, amounting to $8,581.-88. Added to these credits there was shown an expenditure by defendant of a total of $2,329.80 for completion of the subcontract by others under the limitation of time, after plaintiff stopped work on the project in November, 1951. Plaintiff contends that he is entitled to the difference between his total contract price of $21,218.15 and the total advances and costs of final completion, $10,-911.68, or a balance of $10,306.47. As late as February 19, 1952, plaintiff, in his letter to defendant, acknowledged that the payment of a balance then claimed to be due him on estimates must await information from one Mr. Clinton to satisfy government requirements. He testified, however, that he had finished the part of the work Clinton had been engaged to perform.

As a part of plaintiff's evidence he introduced a paragraph of defendant's counterclaim, wherein it was alleged that after plaintiff ceased working on the job, defendant employed other contractors to repair the damages from the delay and faulty workmanship at a cost of $2,389.80.

The plaintiff participated in the trial as plaintiff, as witness and also as counsel pro se with co-counsel. After resting his case and after the defendant had filed a motion for a directed verdict, plaintiff urged the court to permit the case to be reopened to permit him to introduce a letter. The letter, offered in evidence, was written by defendant to plaintiff on March 4, 1952, wherein defendant questioned the amount plaintiff claimed to be due, but admitted a balance was due plaintiff on the basis of the engineer's estimates, subject to 10 percent retention until completion, and subject to the Clinton item. Objection was made on the ground that the letter was a part of a series of exchanged correspondence, and was incompetent in a quantum meruit action. The court said the letter appeared to present a kind of proposed compromise; that the case would not be reopened to receive it, and thereupon sustained the defendant's motion for a directed verdict. Defendant then dismissed its counterclaim.

■ Plaintiff's first point is that the court erred in excluding evidence of the agreed price of the work done. He offered his correspondence constituting the subcontract and the same was received in evidence. Later, when he undertook to compute the amounts earned under his contract, based on quantity estimates furnished the defendant by the engineer, on which defendant was himself paid by the city, the court, on objection, refused to admit such computation in evidence. The objection was that the amounts, as so computed, were not established by the evidence, and that the estimates did not show how much of the work was performed by the plaintiff. Plaintiff testified that no one else had performed any part of the first ten items of his contract, included in the estimates. Plaintiff explained that he offered the computations to show the amounts yet unpaid to him under his contract, as evidence of the reasonable value of the work he performed. Counsel for the defendant further objected on the ground that, nevertheless, the amounts under the contract and estimates were immaterial in a suit in quantum meruit. The court sustained the objection. We believe the court was in error in excluding the evidence of the amounts computed under the terms of the subcontract as based on the engineer's estimates, which would be prima facie evidence of the reasonable value of the work done, not to exceed such contract prices. It was a matter of defense to show that any of the work claimed thereunder by the plaintiff should be deducted.

■ In Oliver L. Taetz, Inc., v. Groff, 363 Mo. 825, 253 S.W.2d 824, 829, it was said in respect to the admissibility of an express contract in a suit as for quantum meruit: "The plaintiff does not repudiate the contract nor seek to avoid it in indebitatus assumpsit as for the quantum meruit, but offers the contract in evidence and his proof of compliance with it to sustain his case. The agreed price, if there is an agreed price, becomes prima facie evidence of the reasonable value of the service. But plaintiff may not recover more than the agreed price. (Citations.)" The above is

a long established principle of law. State ex rel. Electric Household Stores, Inc., v. Hostetter, 338 Mo. 79, 89 S.W.2d 28, 29.

■ Plaintiff next complains that the court erred in excluding evidence of the prices charged and collected by respondent for the work done. This has reference to the original contract between the defendant and the City of Gideon, Missouri. The plaintiff explained that under his contract he was entitled to perform all of the classifications of excavation therein described, and for that reason was entitled to show his prevention from doing so, and was therefore entitled to introduce evidence of the prices for the same items agreed to between the defendant and the city, and so paid. The contract between the defendant and the city was obviously only a part of the work and labor agreed to be furnished the project by the defendant. The evidence showed no relation between the defendant's contract with the city and the subcontract with the plaintiff, as to general overhead expense, profit and other particulars relating to the entire project. Evidently the contract between the defendant and the city as to prices for the work covered by the subcontract with plaintiff, was not admissible in the plaintiff's action.

■ Plaintiff's next contention is that the court erred in striking out evidence of the cost of performing the work he undertook to do by the introduction of certain records kept by his young son. These records covered items of repair on several jobs being carried on at the same time. The work sheets did not specifically show where or to what job all of the labor items should be charged. The information was not offered as the personal knowledge of the witness. Such evidence was properly stricken.

The next point of error is that the court erred in directing a verdict for the respondent. Under this point plaintiff contends that the evidence showed the making of a contract and breach thereof by respondent entitling appellant to recover the reasonable value of the work done, and evidence of the contract price being prima facie proof of the reasonable value, and credits being shown, a submissible case was made. We need not review this point inasmuch as it involves and is predicated upon the points already disposed of.

■ Finally, plaintiff urges that the court abused its discretion in refusing permission to introduce a letter, heretofore referred to, written by the defendant to the plaintiff on March 4, 1952, in which it is claimed defendant admits that it owed a balance to the plaintiff. It would appear on the face of the letter, as offered, that the letter does, at least conditionally, tend to admit that there is some balance yet unpaid to the plaintiff on his subcontract. It is true that the plaintiff had closed his case and that a motion for a directed verdict had been made by the defendant. However, the motion had not been ruled upon and it is not shown that the defendant or court would have been unduly inconvenienced, or that the defendant would have been subjected to undue disadvantage by the reopening of the case for the purpose of admission of the letter. Since the letter appears to be material for the purpose of showing the quantity and value of the work done, we think that under the circumstances the court abused its discretion in refusing to reopen the case for the purpose of receiving the letter so offered.

■ In Parker-Washington Co. v. Dennison, 249 Mo. 449, 155 S.W. 797, the trial court refused to admit evidence of the value of materials involved, after plaintiff had closed his case and a peremptory instruction had been offered. The court said, 249 Mo. at page 473, 155 S.W. at page 804: "If that evidence was material, then the trial court clearly erred in not permitting that fact to be shown. The mere fact that counsel through inadvertence or oversight omits to introduce certain material evidence should be no legal bar to his right to do so when his attention is called to the fact, [unless] the case has proceeded to such a point, or the conditions have so changed,

that an undue advantage would thereby be acquired by him over his adversary."

Because of the errors hereinbefore noted, the judgment is reversed and the cause is remanded for retrial.

PER CURIAM: The foregoing opinion of DEW, Sp. J., on the former submission herein is hereby adopted as the opinion of the court.

All concur.